1 | Robert N. Tafoya (State Bar No. 194444)
Email: robert.tafoya@tafoyagarcia.com
2 | David A. Garcia (State Bar No. 218356)
Email: david.garcia@tafoyagarcia.com
3 | TAFOYA & GARCIA, LLP
316 West Second Street, Suite 1000
4 | Los Angeles, California 90012
Telephone: (213) 617-0600
5 | Facsimile: (213) 617-2226

6 | Attorneys for Plaintiffs
CRELENCIO CHAVEZ and JOSE ZALDIVAR

7 |

8 | **UNITED STATES DISTRICT COURT**

9 | **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10 |

11 | CRELENCIO CHAVEZ and JOSE
ZALDIVAR, an individual and on behalf | Case No.: C-09-04812 SC
12 | of all others similarly situated,

13 | | Assigned to the Hon. Judge Samuel Conti

14 | Plaintiffs, | **PLAINTIFFS' NOTICE OF MOTION AND
MOTION FOR CLASS CERTIFICATION**

15 | vs. | Declarations, Exhibits, and Request for Judicial
Notice in Support of Motion filed Concurrently

16 |

17 | LUMBER LIQUIDATORS, INC., a | Date: February 24, 2011
Delaware corporation; and DOES 1 | Time: 10:00 a.m.
18 | through 20, inclusive, | Place: Crtrm 1, 17th Floor

19 | | [Proposed] Order Lodged Concurrently

20 | Defendants.

21 | //

22 | //

23 | //

24 | //

25 | //

26 | //

27 | //

28 | //

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS ACTION CERTIFICATION

**TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 24, 2011, at 10:00 a.m., in Courtroom 1, 17th Floor, of this Court, at 450 Golden Gate Avenue, San Francisco, CA94102, Plaintiffs Crecensio Chavez and Jose Zaldivar, for themselves and on behalf of all others similarly situated, will move for orders as follows:

<u>**RELIEF SOUGHT**</u>

Pursuant to Rules 23(a) and 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs seek an order certifying the following classes:

1. All of Defendants' past and present California employees who formerly worked or are currently working for Lumber Liquidators, Inc. in the position of "Store Manager" from September 3, 2005 through the present. **[Misclassification Unpaid Overtime Class I]**

2. All past and current retail store employees of Defendants classified by Defendants as non-exempt employees (including, but not limited to assistant store managers, sales associates, and warehouse associates), and employed in California from September 3, 2005 through the present, who were paid overtime wages and were also paid commission wages and/or other non-discretionary incentive pay or bonuses. **[Unpaid Overtime Class II]**

3. All past and current California employees of Defendants classified by Defendant as non-exempt employees (including, but not limited to assistant store managers, sales associates, and warehouse associates) who worked more than 6 hours in any work shift from September 3, 2005 through the present. **[Missed Meal Break Class]**

4. All past employees of Defendant employed in California from September 3, 2005 through the present who accrued vacation wages that were not cashed out or used. **[Unpaid Vacation Class]**

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS ACTION CERTIFICATION

5. All past and current employees of Defendants who were employed in California from September 3, 2005 through the present who were not reimbursed for all work-related expenses. **[Unpaid Reimbursement Class]**

Plaintiffs further request that the Court appoint the Named Plaintiffs Crecencio Chavez and Jose Zaldivar as class representatives, and the law firm of Tafoya & Garcia LLP as class counsel.

This motion is made after counsel conferred, and were unable to avoid this motion. This motion is based on this Notice, the attached Memorandum of Points and Authorities, the attached consent form, the concurrently filed declarations, and such other matters as may be presented by the moving parties.

Dated: December 30, 2011

TAFOYA & GARCIA, LLP

By:_____/s/_____
David A. Garcia
Attorneys for Plaintiffs CRELENSIO CHAVEZ
and JOSE ZALDIVAR

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS ACTION CERTIFICATION

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES.................................................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES..........................................1

I.   INTRODUCTION ........................................................................................1

II.  STATEMENT OF ISSUE TO BE DECIDED................................................1

III. FACTUAL BACKGROUND ........................................................................2

    A.  THE PARTIES .....................................................................................2

        1.The Plaintiffs and the Current and Former Employees of LLI ................2

        2.LLI .............................................................................................5

IV. LEGAL STANDARD ...................................................................................7

    A.  RULE 23(a)..........................................................................................8

        1.Numerosity................................................................................8

        2.Commonality.............................................................................9

        3.Typicality .................................................................................9

        4.Adequate Representation ........................................................10

    B.  RULE 23 (b) .....................................................................................10

        1.Predominance..........................................................................10

        2.Superiority...............................................................................11

V.  ANALYSIS ................................................................................................11

    A.  UNPAID OVERTIME CLASS ............................................................11

        1.Rule 23(a)................................................................................12

        2.Rule 23(b) ...............................................................................14

    B.  UNPAID OVERTIME CLASS II ........................................................14

        1.Rule 23(a)................................................................................15

        2.Rule 23(b) ...............................................................................16

    C.  MISSED MEAL PERIOD CLASS ......................................................17

i

1.Rule 23(a)..................................................................................17

2.Rule 23(b) ................................................................................18

D.  UNPAID REIMBURSEMENT CLASS ..........................................18

1.Rule 23(a)..................................................................................19

2.Rule 23(b) ................................................................................20

E.  VACATION CLASS .......................................................................21

1.Rule 23(a)..................................................................................21

VI. RULE 23(B)(2) CERTIFICATION...........................................................22

VII.  CONCLUSION....................................................................................22

1

## TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

Amaral v. Cintas Corp. No. 2
    163 Cal.App.4th 1157, 1189 (2008)...........................................................................13

5

Bell v. Farmers Ins. Exchange
    115 Cal.App.4th 715, 746–751 [9 Cal. Rptr. 3d 544] [2004] .........................................16

6

7

Boothby v. Atlas Mechanical, Inc.
    6 Cal. App.4th 1595, 1597 [8 Cal. Rptr. 2d 600] [1992] ...............................................25

8

Cicairos v. Summit Logistics, Inc.
    133 Cal.App.4th 949, 961–963 [35 Cal. Rptr. 3d 243] [2005] .......................................16

9

Covino v. Governing Board
    76 Cal. App. 3d 314, 322-23 (1977) ........................................................................22

10

11

Earley v. Superior Court
    79 Cal.App.4th 1420, 1430 (2000) .........................................................................12

12

Edwards v. Arthur Andersen LLP
    44 Cal. 4th 937, 952, 81 Cal. Rptr. 3d 282, 189 P.3d 285 (2008)..................................21

13

14

Gould v. Maryland Sound Industries, Inc.
    31 Cal.App.4th 1137, 1148-1149 (1995) ..................................................................13

15

Hernandez v. Mendoza
    199 Cal.App.3d 721, 726–728,245 Cal. Rptr. 36, [1988]..............................................15

16

17

Los Angeles Fire Police Protective League v. City of Los Angeles
    23 Cal. App. 3d 67, 99 Cal. Rptr. 908 (1972) ............................................................20

18

Madera Police Officers Ass'n v. City of Madera
    36 Cal. 3d 403, 204 Cal. Rptr. 422, 682 P.2d 1087 (1984)...........................................20

19

20

Marin v. Costco Wholesale Corp.
    169 Cal. App. 4th 804, 807 (2008)..........................................................................17

21

Monzon v. Schaefer Ambulance Service, Inc.
    224 Cal.App.3d 16, 29 (1990) ...............................................................................12

22

23

Morillion v. Royal Packing Co.
    22 Cal.4th 575, 585 (2000) ........................................................................13, 15, 17

24

Nordquist v. McGraw-HillBroadcasting Co.
    32 Cal. App. 4th 555, 562, 38 Cal. Rptr. 2d 221 (1995) ..............................................15

25

Ramirez v. Yosemite Water Co. Inc.
    20 Cal. 4th 785, 794-95, Cal. Rptr. 2d 844 (1999) .....................................................14

26

27

Suastez v. Plastic Dress-Up Co.
    31 Cal.3d 774, 780, 784 [183 Cal. Rptr. 846, 647 P.2d 122] (1982) ..............................24

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS ACTION CERTIFICATION

1

**FEDERAL CASES**

2

Agent Orange Prod. Liab. Litig.
  818 F. 2d 145, 167 (2nd Cir. 1987) .............................................................. 14

3

Alba v. Papa John's USA
  No. CV 05-7487 GAF (CTx), 2007 U.S. Dist. LEXIS 28079, at *33-36 (C.D. Cal. Feb.

4

  7, 2007) ......................................................................................................... 23

5

Amchem Products, Inc. v. Windsor
  521 U.S. 591, 614 (1997) ................................................................................ 7

6

7

Armstrong v. Davis
  275 F.3d 849, 868 (9th Cir. 2001) ................................................................ 10

8

Becher v. Long Island Lighting Co.
  164 F.R.D. 144 (E.D. N.Y. 1996) ................................................................... 8

9

10

Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975) ........................ 8, 17, 26

11

Brown v. Federal Express Corp.
  249 F.R.D. 580, 585 (C.D. Cal. 2008) ......................................................... 20

12

Byes v. Telechek Recovery Services, Inc.
  173 F.R.D. 421, 427-28 (E.D. La. 1997) ...................................................... 11

13

14

Corning Glass Works v. Brennan
  417 U.S. 188, 196-97, 94 S. Ct. 2223, 41 L. Ed. 2d 1 (1974) ...................... 14

15

Dujanovic v. Mortgage Am., Inc.
  185 F.R.D. 660, 668 (N.D. Ala. 1999) .......................................................... 11

16

Dynamic Random Access Memory (DRAM) Antitrust Litig.
  2006 U.S. Dist. LEXIS 39841, 2006 WL 1530166, at *6 (N.D. Cal.) ........... 21

17

18

Eisen v. Carlisle & Jacquelin
  417 U.S. 156, 177–78 (1974) .......................................................................... 8

19

Gibbs Properties Corp. v. CIGNA Corp.
  196 F.R.D. 430, 436 (M.D. Fla. 2000) ..................................................... 11, 16

20

21

Haley v. Medtronic, Inc.
  169 F.R.D. 643, 647 (C.D. Cal. 1996). ........................................................... 7

22

Hanlon v. Chrysler Corp.
  150 F.3d 1011, 1019 (9th Cir. 1998) ........................................................... 9, 12

23

Koenig v. Benson
  117 F.R.D. 330, 337 (E.D.N.Y. 1987) ........................................................... 11

24

25

Lerwill v. Inflight Motion Pictures, Inc.
  582 F.2d 507, 512 (9th Cir. 1978) ................................................................ 10

26

Mateo v. V.F. Corp.
  2009 U.S. Dist. LEXIS 105921, at *17 (N.D. Cal. Oct. 27, 2009) ................ 17

27

28

Moore v. Hughes Helicopters, Inc.
      708 F.2d 475, 480 (9th Cir. 1983) .......................................................................... 8

Robidoux v. Celani
      987 F.2d 931, 936 (2nd Cir. 1993) .......................................................................... 8

Romero v. Producers Dairy Foods, Inc.
      235 F.R.D. 474, 489 (E.D. Cal. 2006) .................................................................... 14

Stuart v. Radioshack Corp.
      641 F Supp 2d 901 (2009, N.D. Cal.; Judge Chen) ............................................... 22

Valentino v. Carter-Wallace, Inc.
      97 F.3d 1227, 1234 (9th Cir. 1996) .................................................................. 12, 19

Vizcaino v. United States District Court
      173 F.3d 713, 722 (9th Cir. 1999) .......................................................................... 15


**OTHER AUTHORITIES**

29 C.F.R. § 778.209(a) .......................................................................................... 18

Cal. Code Regs., tit. 8, § 11070 ............................................................................ 17

Civ. Code § 3513 ................................................................................................... 23

Federal and State Levels § 3.05, at 141-42 (2d ed. 1985) ..................................... 9

James Wm. Moore et al., Moore's Federal ............................................................. 8

L.C. § 227.3 .......................................................................................................... 26

Lab. Code § 2804 .................................................................................................. 22

Lab. Code, § 1174 ................................................................................................. 13

Lab. Code, § 1175 ................................................................................................. 13

Lab. Code, § 1194 ................................................................................................. 14

Lab. Code, § 1199 ................................................................................................. 13

Lab. Code, § 510 ................................................................................................... 17

Labor Code § 226 .................................................................................................. 26

Labor Code § 226.7 ............................................................................................... 20

Labor Code § 512 .................................................................................................. 20

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS ACTION CERTIFICATION

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2 **I.     INTRODUCTION**

3          In this wage and hour proposed class action case, Lumber Liquidators Inc. ["LLI"]

4 described the job duties of a non-exempt hourly workers in a manner that encapsulates the

5 primary duties also performed by the "exempt" Store Managers most of their workday:

6                    Their primary role is to drive sales and profits for the store, comply
                     with company procedures and policies, meeting, selling to
7                    customers, assisting customers with purchases beyond selling,
                     returns, what have you, normal retail things, the front of the house,
8                    maintaining housekeeping and stock keeping of the entire building
                     and outside exterior building, unloading trucks, loading trucks,
9                    perhaps delivering things to customers, going to the bank,
10                   maintaining records, financial records, and customer records
                     accurately and within company policies.
11

12 (LLI 30(b)(6) Deposition II ["LLI Depo."], attached as Exh. "A" to the Declaration of David A.

13 Garcia.) Indeed, according to the abundant evidence supporting this instant motion for class

   certification, including declarations and testimony from eight Store Managers throughout LLI
14
   stores in Albany, Commerce, the City of Industry, Ontario, Rancho Cucamonga, San Diego,
15
   San Jose, Santa Ana, Ventura, West Los Angeles Stores, all LLI employees performed the
16
   same basic manual duties as non-exempt employees, from 60 to 80 hours per week in many
17
   instances, over 75% to 90% of their work time, during the class period, against California law,
18
   without proper pay.

19          Similarly, when LLI's non-exempt workers worked overtime hours, Defendant

20 disguised what should have been overtime pay as "bonuses" or "commissions" which it did not

21 then include when calculating any overtime rate of pay. In fact, Defendant has a business goal --

22 and, indeed, a publicly-stated business strategy -- of growing its business by *shorting* Plaintiff

23 and other similarly situated employees on their proper overtime pay. (See, e.g., Plaintiff's

   Request for Judicial Notice of Lumber Liquidators, Inc.'s SEC Form 10-K filing for FY 2008,
24
   page 5: "A typical store staff consists of a ... compensation structure generally weighting sales-
25
   driven bonuses over a relatively low base salary.")
26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS ACTION CERTIFICATION

As detailed below, class certification is appropriate to adjudicate the reoccurring issues of LLI understaffing its stores, and not paying its workers appropriately for all their work time and benefits as promised and as required under California law.

## II.   STATEMENT OF ISSUE TO BE DECIDED

Whether the proposed classes in this case should be certified pursuant to Rules 23(a), 23(b)(2) and 23 (b)(3) of the Federal Rules of Civil Procedure.

## III.   FACTUAL BACKGROUND

### A.   The Parties

1.   The Plaintiffs and the Current and Former Employees of LLI

Plaintiff Crecencio Ramon Chavez (erroneously named "Crecensio" in the Second Amended Complaint) worked for LLI from the year 2000 to April 2009 as a "Store Manager" at LLI's Store in Commerce, California, which sold wood flooring and similar products to customers. (See pages 57:8-12; 71:19-23 of the Deposition of Crecencio R. Chavez ["Chavez Depo."], attached as Exh. "B" to the Declaration of David A. Garcia ["Garcia Decl."].) Plaintiff Chavez's primary duties involved "helping customers, hitting goals," warehousing, driving, checking material in, separating the material, shipping the materials to different locations. (Chavez Depo. 102:13-104:9.) While Plaintiff Chavez worked for LLI, the Commerce Store was generally open as follows: Monday: 8 a.m.-5 p.m.; Tuesday: 8 a.m.-5 p.m.; Wednesday: 8 a.m.-5 p.m.; Thursday: 8 a.m.-7 p.m., Friday: 8 a.m.-7 p.m., Saturday: 9 a.m.-4 p.m. Sunday: 11 a.m.-4 p.m., a total of 61 Hours. (Chavez Depo. 125:1-126:6.) Plaintiff Chavez typically worked six days per week through 2007, and five days per week from approximately 2008-2009. (Chavez Depo. 249:9-250:10.) Plaintiff generally worked approximately 52-56 hours per week, slightly over 10 hours per workday from 2005 through 2007, and approximately 48-50 hours per week during approximately the last year and half of his employment to April 2009. (Chavez Depo. 250:18-25.) Plaintiff Chavez spent over 5 to 6 hours per day helping customers, or 36 to 42 hours per week. (Chavez Depo. 247:5-20.) On top of assisting customers, Plaintiff Chavez also spent considerable time, over 85% of his workday, checking in new material and moving it into the warehouse off of trucks, depending on how many trucks arrived, and "pulling" orders from the warehouse for customers. (Chavez Depo. 248:3-18; Chavez Decl. 3.)

1   Plaintiff Chavez "didn't have time" for "lunches" or meal breaks during his workday. (Chavez

2   Depo. 248:3-18.) Throughout his work for LLI, not once did LLI ever present to Plaintiff

3   Chavez any itemization or breakdown of how his bonuses/commissions were calculated by

4   LLI, and to date Plaintiff Chavez has no idea what his incentive pay was based on while he

5   worked for LLI. (Chavez Decl. 3.) When his employment ended at LLI in April 2009, the

6   Company did not pay Plaintiff Chavez for all his accrued vacation time owed to him. (See E-

7   mail from Chavez to LLI, dated April 19, 2009 attached as "A" to Chavez Decl.

8         Plaintiff Jose Zaldivar worked at LLI from July 2007 to June 2010 as an hourly

9   Assistant Manager entitled to overtime at Store 95 [19555 Walnut Dr. South, City of Industry,

10   CA 91748].  (See pages 11:19-12:2; 35:5-14; 41:21-25 of the Deposition of Jose Zaldivar

11   ["Zaldivar Depo."], attached as Exh. "C" to the Garcia Decl.) Plaintiff Zaldivar's duties

12   consisted of "Warehouse 1, sales, and pretty much upkeeping -- upkeeping of the store."

13   (Zaldivar Depo. 42:7-19.) Zaldivar's "warehouse" duties consisted of "Loading customers and

14   restrapping material, tagging pallets, making notes about orders that had to be done as far as

15   ordering moldings [and] unloading of trucks...." (Zaldivar Depo. 42:12-19.) Zaldivar's sales

16   duties consisted of "selling flooring," and to "hit what they call 'buckets,' four buckets as far as

17   GP was concerned, e-mails, molding sales" and "gross margin "molding percentages, e-mail

18   percentages, and store numbers as far as whatever they set for us to hit." (Zaldivar Depo. 43:2-

19   18.) Zaldivar's "upkeeping" duties consisted of keeping "rest rooms clean, windows clean;

20   painting. [ ] redoing -- doing pricing, tagging... merchandising. [ ] set out displays [...]

21   Sweeping in and out of the store." (Zaldivar Depo. 43:19-44:10.) Zaldivar began to earn a

22   "commission" in addition to his hourly pay after 90 days after commencing his employment

23   with LLI, but he never got a breakdown of the "commissions" nor did he understand how LLI

24   calculated his "commission" or bonus. (Zaldivar Depo. 162:1-21; 183:22-184:10.) Zaldivar

25   never saw any commission plan or "sales bonus document." (Zaldivar Depo. 165:7-166:13.)

26   From July 2007 to June 2010 LLI paid Plaintiff Zaldivar $12,282.87 as a "Sales Bonus" which

27   it failed to include in his Regular Rate of Pay when it calculated his overtime rate. (See

28   Zaldivar Earning Statements [Bates Labeled LUMBER000376- LUMBER000382], attached as

Exh. "D" to Garcia Decl.

- 3 -

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS ACTION CERTIFICATION

1
2
3
4
5
6
7
8
9
10

Employees of LLI at other California stores all performed the same general duties as Plaintiff Zaldivar and Plaintiff Chavez. Joel Villasenor currently works for LLI, as a "Store Manager" at LLI's Ontario store from January 2005 through January 2010, and then LLI moved him to its Rancho Cucamonga Store also a "Store Manager." (See Declaration of Joel Villasenor, ¶¶3-10.) Mr. Villansenor's duties have been basically the same the entire time he has worked for LLI, even currently, and he has spent over 90% of his work time, over 75-80 hours per week, performing the same duties as everyone else, counting inventory, unloading, sorting, and storing inventory in the warehouse, answering phone calls, charging customers for purchases, wrapping up boxes of wood product for customers, and organizing the warehouse with the forklift. (Id. at ¶13.)

11
12
13
14
15
16
17

Andrew Owens ("Mr. Owens") worked in various positions for LLI, mostly as a "Store Manager" for LLI's Santa Ana store, from January 2005 to January 2006; at its Albany store, from November 2006 to September 2007, and at its West Los Angeles store, from September 2007 to January 2011, spending over 70% of his overall work time, ranging from 45-60 hours per week, on the same duties as the assistant store manager and warehousers, as all collectively worked together to answer phones, write up customer orders, organize the warehouse, and load up customer pick-ups. (See Declaration of Andrew Owens, ¶¶3-10.)

18
19
20
21

Jeffrey Wootton worked various positions for LLI from December 2006 to November 2009, lastly, from approximately October 2007 to the end of his employment, as a "Store Manager" at LLI's Santa Ana store in California. (See Declaration of Jeffrey Wootton, ¶¶3-10.) Mr. Wootton spent over 85% of his work time for LLI on the same manual work duties as others in the store.

22
23
24
25
26

Mike Hammit worked at LLI's San Diego store from approximately February 2006 to June 2011, as a "Store Manager," working between 70 to 80 hours per week, spending over 90% of his work time on the same manual tasks of unloading, sorting, and storing inventory in the warehouse, answering phone calls, charging customers for purchases, and delivering the sold product to customers. (See Declaration of Mike Hammit ¶¶3-21.)

27
28

Rene Rodriguez worked in various positions at various LLI California stores from approximately September 2001 to March 2009, as a "Store Manager" at LLI's Ontario Store in

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS ACTION CERTIFICATION

2002, as an "Assistant Manager" at LLI's Commerce store briefly in 2002, as a "Store Manager" at LLI's Santa Ana store after 2002 through 2006, and from 2006 to 2009 at LLI's store in the City of Industry. (See Declaration of Rene Rodriguez ¶¶3-21.) Mr. Rodriguez performed the same basic manual tasks at all these stores, over 90% of each work day over 75-80 hours per week, on the same tasks as the non-exempt employees in the store.

Robert Kijewski worked for LLI from approximately January 2006 to December 2009, mostly as a "Store Manager," starting in June 2006, at LLI's Santa Ana store in California, over 50-60 hours per week, or at least 90% of his work time, performing the same manual tasks (loading, unloading, warehousing, assisting customers) as other employees in the store and other "Store Managers" at other stores. (See Declaration of Robert Kijewski ¶¶2-19).

Jason McMillan worked for LLI from approximately August 2005 to May 2009, last as a "Store Manager" starting in 2007, at LLI's Ventura store in California, approximately 80 hours per week, or at least 90% of his work time, performing the same manual tasks as other employees in the store and other "Store Managers" at other stores. (See Declaration of Jason McMillan ¶¶2-19).

2. LLI

Defendant currently has 23 locations in California. (LLI Dep. II 172:17-173:6.) Employee positions at those locations are: store manager, assistant store manager, warehouse sales, regional manager, and senior vice president. (Deposition of Lumber Liquidators, Inc. ["LLI Depo."], 22:16 to 24:3. LLI has processed its payroll for California employees from, centrally, its Virginia "home office" where LLI's Payroll Department has done all the overtime wages and other wage calculations for the entire company nationwide. (LLI Depo. 41:21 to 42:1; 47:20-48:7.)

Defendant staffs its stores in a common manner. In 2008, for example, LLI emphasized its "integrated" approach:

> **"Integrated Multi-Channel Sales Model"**: We have an integrated multi-channel sales model that enables our national store network, call center, website and catalogs to work together in a coordinated manner."

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS ACTION CERTIFICATION

1

(See Plaintiff's Request for Judicial Notice of Lumber Liquidators, Inc.'s SEC Form 10-K filing

2

for FY 2008, page 5; see also, Zaldivar Decl., ¶3.)

3

Similarly, LLI has employed a common business strategy of favoring "bonuses" in

4

addition to a "low base salary":

5

> A typical store staff consists of a manager and two to three associates, with a
> compensation structure generally weighting sales-driven bonuses over a

6

> relatively low base salary. (Id.)

7

Lumber Liquidators provides standardized training for associates:

8

> Many of our store managers have previous experience with the
> home improvement, retail flooring or flooring installation

9

> industries, and we have a formal standardized training program for

10

> all of our store associates.

11

(See Exh. "B" to Plaintiff's Request for Judicial Notice of Lumber Liquidators, Inc.'s SEC

Form 10-K filing for FY 2009, page 5; Zaldivar Decl., ¶¶ 3.)

12

Exempt and non-exempt employees in LLI's stores, such as Mike Hammit, Robert

13

Kijewski, Jason McMillan, Andrew Owens, Rene Rodriguez, Jeff Wootton, Joel Villasenor,

14

working at LLI stores in Albany, Commerce, the City of Industry, Ontario, Rancho

15

Cucamonga, San Diego, San Jose, Santa Ana, Ventura, West Los Angeles Stores, all performed

16

the same basic manual duties. (See Declarations In Support of Class Cert., generally, ¶¶ 4-19.))

17

LLI has a procedure common to its California stores for calculating and paying wages.

18

LLI's nationwide policy applying to "all employees" states that each employee is paid weekly

19

for "earnings for all work performed." (See Defendant's Pay Period Policy, p. 21 of its

20

Employee Handbook, attached as Exh. "E" to Garcia Decl.) LLI employs the same timekeeping

21

policy, which is included in its employee handbook, for its stores in every state. (LLI Depo.

22

28:1 to 30:10; 30:18-33:14.)  In addition, up until the company's recent nationwide switch over

23

to a "POS" terminal timekeeping in April 2010, it used uniform, preprinted timesheets designed

24

to accept specific date and time information. (LLI Depo. at  39:11-14;. 58:14 -23.) All the

25

timesheets used the same embedded calculation formulae. (LLI Depo. 41:18-20.) The

26

electronic timekeeping process, introduced as noted above, in April 2010, is also uniform

27

statewide and nationwide. (LLI Depo. 63:11; 64:5-25; see also pages 65:1-66:25.)

28

- 6 -

LLI miscalculated overtime for many of its employees. (LLI Depo. 92:20 to 94:21.) Nonexempt retail employees received commissions or bonuses that were not counted for overtime purposes, in violation of state law. (LLI Depo. 98:13 to 99:25; 107:11 to 108:6); (LLI Depo. 100:19 to 101:2.) The commissions and bonuses were paid regularly, on a monthly basis, but LLI did not detail to employees the source or calculation supporting any commission/bonus payment. (See Declarations of Mike Hammit, Robert Kijewski, Jason McMillan, Andrew Owens, Rene Rodriguez, Jeff Wootton, Joel Villasenor, generally, ¶¶18 -20.)

In June 2010, after this lawsuit was filed, Lumber Liquidators took steps to correct its prior undercalculation of overtime rates of pay, by incorporating its employees overtime bonus with the overtime for hours worked, and adding a new item on its pay stubs for "bonus overtime." (LLI Depo. 84:21-90:9.) It made this change nationwide. (LLI Depo. 85:15-24; see also, 86:8 to 89:23; 127:3 to 19.)

LLI's nonexempt employees have had their own bonus plan since at least March 2007. (LLI Depo. 108:16-22.) Lumber Liquidators uses a common bonus pool for nonexempt employees. (LLI Depo. 137:18 to 139:21.) Lumber Liquidators calculated some bonuses such that the bonus could be lost and never actually paid out to the employee. (LLI Depo. 145:18-25.)

## IV. **LEGAL STANDARD**

A party seeking to certify a class must satisfy the four prerequisites enumerated in Rule 23(a), as well as at least one of the requirements of Rule 23(b). Under Rule 23(a), the party seeking class certification must establish: (1) that the class is so large that joinder of all members is impracticable (i.e., numerosity); (2) that there are one or more questions of law or fact common to the class (i.e., commonality); (3) that the named parties' claims are typical of the class (i.e., typicality); and (4) that the class representatives will fairly and adequately protect the interests of other members of the class (i.e., adequacy of representation). Fed. R. Civ. P. 23(a). Class actions have two primary purposes: to further judicial economy by avoiding multiple suits and to protect the rights of persons who "might not be able to present claims on an individual basis." Haley v. Medtronic, Inc., 169 F.R.D. 643, 647 (C.D. Cal. 1996).

1

2   In addition to satisfying these prerequisites, parties seeking class certification must

show that the action is maintainable under Rule 23(b)(1), (2) or (3). See Rule 23(b); Amchem

3 Products, Inc. v. Windsor, 521 U.S. 591, 614 (1997). A class may be certified under Rule

4 23(b)(1) if the prosecution of separate actions would create a risk of inconsistent judgments.

5 Rule 23(b)(2) certifications are appropriate where the party opposing the class has acted or

6 refused to act on grounds generally applicable to the class, justifying injunctive or declaratory

7 relief. A class may be certified under Rule 23(b)(3) where questions of law or fact common to

8 members of the class predominate and a class action is superior to other available methods. At

9 this state of the proceedings, the Court must accept the factual allegations in the complaint as

10 true. Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975).

11   The merits of the class members' substantive claims are generally irrelevant to this

12 inquiry. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177–78 (1974); Moore v. Hughes

13 Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983).

14   **A.**  **Rule 23(a)**

15     1.  <u>Numerosity.</u>

16   Pursuant to Rule 23, the class must be "so numerous that joinder of all members is

impracticable." Fed. R. Civ. P. 23(a)(1). As a general rule, classes numbering greater than 41

17 individuals satisfy the numerosity requirement. See 5 James Wm. Moore et al., Moore's Federal

18 Practice § 23.22[1][b] (3d ed. 2004). "The difficulty in joining as few as 40 class members

19 should raise a presumption that joinder is impracticable." Robidoux v. Celani, 987 F.2d 931,

20 936 (2nd Cir. 1993) (citing 1 Herbert B. Newberg, Newberg on Class Actions: A Manual for

21 Group Litigation at Federal and State Levels § 3.05, at 141-42 (2d ed. 1985); Becher v. Long

22 Island Lighting Co., 164 F.R.D. 144 (E.D. N.Y. 1996), order amended, 172 F.R.D. 28, 38 Fed.

23 R. Serv. 3d 1102 (E.D. N.Y. 1997) (Numerosity is presumed at 40 class members).

24   Classes with as few as 14 to 20 class members may be certified. Ark. Ed. Ass'n v. Bd.

25 of Ed. of Portland, Ark. School Dist., 446 F.2d 763, 765 (8th Cir. 1971) (class of twenty black

26 teachers in school district was sufficiently numerous), cited at Costelo v. Chertoff, 258 F.R.D.

27 600, 607 (C.D. Cal. 2009); Grant v. Sullivan, 131 F.R.D. 436 (M.D. Pa. 1990) (government

28 benefits) (court may certify a class of 14 members); In re Air Passenger Computer Reservation

- 8 -

1  Systems Antitrust Litigation, 116 F.R.D. 390 (C.D. Cal. 1986) (debtors) (16-member class

2  certified).

3       Factors relevant to the impracticability of joinder "include judicial economy arising

4  from the avoidance of a multiplicity of actions, geographic dispersion of class members,

5  financial resources of class members, the ability of claimants to institute individual suits, and

6  requests for prospective injunctive relief which would involve future class members."

7  Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993).

8       LLI employed 43 "exempt" Store Managers and 130 "non-exempt" employees in

9  California throughout the relevant time period (September 2005 to the present). (See LLI Depo.

10  II p. 172:9-15, 175:14-22, 211:5-8.)

11       These factors weigh in Plaintiff's favor. Plaintiffs and the Declarants are widely-

12  dispersed, throughout LLI stores in Albany, Commerce, the City of Industry, Ontario, Rancho

13  Cucamonga, San Diego, San Jose, Santa Ana, Ventura, West Los Angeles Stores, and their

14  claims overlap because of how LLI understaffed all their stores as a common business strategy.

15  Joinder here would be a financial hardship to these current and former employees throughout

16  California, if not an impossibility, for all of them.

           2.    Commonality

17       Courts have construed Rule 23(a)(2)'s commonality requirement permissively. Hanlon

18  v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). As the Ninth Circuit has explained:

19           All questions of fact and law need not be common to satisfy the
             rule. The existence of shared legal issues with divergent factual
20           predicates is sufficient, as is a common core of salient facts
             coupled with disparate legal remedies within the class.
21

22  Id.

23       Additionally, another Court in this District has stated that "the commonality

24  requirement is interpreted to require very little." In re Paxil Litig., 212 F.R.D. 539, 549 (C.D.

25  Cal. 2003) "[F]or the commonality requirement to be met, there must only be one single issue

26  common to the proposed class." Haley, 169 F.R.D. at 648.

           3.    Typicality

27       To gauge typicality, a "court does not need to find that the claims of the purported class

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS ACTION CERTIFICATION

representative are identical to the claims of the other class members." <u>Haley</u>, 169 F.R.D. at 649. The Ninth Circuit in Hanlon further wrote that "[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." 150 F.3d at 1020. Additionally, the class representatives "must be able to pursue [their] claims under the same legal or remedial theories as the unrepresented class members." <u>Paxil</u>, 212 F.R.D. at 549.

While commonality requires only one unifying factual or legal question, typicality requires "'that the claims of the class representatives be typical of those of the class'" and is achieved "'when each member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" <u>Paxil</u>, 212 F.R.D. at 550 (quoting <u>Armstrong v. Davis</u>, 275 F.3d 849, 868 (9th Cir. 2001)).

>        4.        Adequate Representation

Traditionally, courts have engaged in a two-part analysis to determine if the plaintiffs have met the requirements of Rule 23(a)(4): (1) the class representatives must not have interests antagonistic to the unnamed class members and (2) the representatives must be able to prosecute the action "vigorously through qualified counsel." <u>Lerwill v. Inflight Motion Pictures, Inc.</u>, 582 F.2d 507, 512 (9th Cir. 1978). The key is whether the proposed class representative demonstrates such a lack of knowledge or understanding about the case -- what has been called by some courts "alarming unfamiliarity," <u>Koenig v. Benson</u>, 117 F.R.D. 330, 337 (E.D.N.Y. 1987) -- that there appears to be simply blind reliance on class counsel. Courts have found that a plaintiff may adequately represent the class if he or she has a "basic understanding about the nature of the suit," <u>Byes v. Telechek Recovery Services, Inc.</u>, 173 F.R.D. 421, 427-28 (E.D. La. 1997), or a generalized understanding of the allegations in the case. See <u>Gibbs Properties Corp. v. CIGNA Corp.</u>, 196 F.R.D. 430, 436 (M.D. Fla. 2000); <u>see also Dujanovic v. Mortgage Am., Inc.</u>, 185 F.R.D. 660, 668 (N.D. Ala. 1999) (finding proposed representative adequate because, even though his belief that the claims arose from the broker's act of increasing his interest rate was not technically correct, his "assessment of the alleged wrongful conduct is essentially correct....")

> **B.**     **Rule 23(b)**

1

### 1.   Predominance

2      A class action may be maintained under Rule 23(b)(1) if prosecuting separate actions by

3   or against individual class members would create a risk of: (A) inconsistent or varying

4   adjudications with respect to individual class members that would establish incompatible

5   standards of conduct for the party opposing the class; or (B) adjudications with respect to

6   individual class members that, as a practical matter, would be dispositive of the interests of the

7   other members not parties to the individual adjudications or would substantially impair or

8   impede their ability to protect their interests."

9

### 2.   Superiority

10      Under Rule 23(b)(3), a class action may be maintained if the court finds that the

11   questions of law or fact common to class members predominate over any questions affecting

12   only individual members, and that a class action is superior to other available methods for fairly

13   and efficiently adjudicating the controversy. So long as common questions predominate, a class

14   action will be a superior method of adjudication and that the four criteria listed in (A)-(D)

15   would counsel in favor of certification. The key issue is thus predominance. "'The Rule

16   23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to

17   warrant adjudication by representation.'" <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1022 (9th

18   Cir. 1998). "Implicit in the satisfaction of the predominance test is the notion that the

19   adjudication of common issues will help achieve judicial economy." <u>Valentino v. Carter-</u>

20   <u>Wallace, Inc.</u>, 97 F.3d 1227, 1234 (9th Cir. 1996). "When common questions present a

21   significant aspect of the case and they can be resolved for all members of the class in a single

22   adjudication, there is clear justification for handling the dispute on a representative rather than

     on an individual basis." <u>Hanlon</u>, 150 F.3d at 1022.

23   ## V.   ANALYSIS

24   ### A.   UNPAID OVERTIME CLASS

25      To promote the welfare of workers and the public, society imposes hour and wage laws

26   on employers. <u>Earley v. Superior Court</u>, 79 Cal.App.4th 1420, 1430 (2000); <u>Monzon v.</u>

27   <u>Schaefer Ambulance Service, Inc.</u>, 224 Cal.App.3d 16, 29 (1990). An employer is liable for

28   overtime if it "'knows or has reason to believe that [the employee] is continuing to work. . . . In

- 11 -

all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed.'" (Morillion v. Royal Packing Co. 22 Cal.4th 575, 585 (2000). An employer may not shirk that duty. (See Lab. Code, § 1199 [misdemeanor to pay less than legally mandated overtime wage]; Gould v. Maryland Sound Industries, Inc., 31 Cal.App.4th 1137, 1148-1149 (1995).) To ensure employees receive their overtime pay, employers must keep accurate payroll records. (Lab. Code, § 1174, subd. (d) [employer's duty to keep payroll records; Lab. Code, § 1175, subd. (d) [misdemeanor for employer not to keep payroll records].)

An employer may <u>not</u> delegate to employees the duty to keep accurate payroll records, nor may the employer turn a blind eye to its employees' accrual of overtime by shifting to employees the duty to claim overtime when the employer knows, or has reason to know, the employees are working overtime. (Amaral v. Cintas Corp. No. 2, 163 Cal.App.4th 1157, 1189 (2008) [may not shift record keeping burden to employees]; accord Lab. Code, § 1194, subd. (a) ["Notwithstanding any agreement to work for a lesser wage, any employee receiving less than . . . legal overtime compensation . . . is entitled to recover in a civil action the unpaid balance of the full amount of . . . overtime compensation . . . ."].)

       1.     Rule 23(a)

Numerosity. Here, the proposed class may exceed 43 employees, depending on how many employees actually worked in the position of Store Manager in the 23 stores during the class period. (LLI Depo. II, <u>supra</u>, LLI Depo. II p. <u>172:9-15, 175:14-22, 211:5-8.</u>)

Commonality: Plaintiff Chavez and LLI's Store Managers commonly worked in LLI stores with as few employees as LLI could staff in the store, performing primarily non-exempt tasks, from 75% to 95% of the workweek, performing the same manual tasks as the non-exempt employees (loading, unloading, warehousing, assisting customers) and other "Store Managers" at the other 23 stores. (<u>See</u> Decls. of Mike Hammit, Robert Kijewski, Jason McMillan, Andrew Owens, Rene Rodriguez, Jeff Wootton, Joel Villasenor, generally, ¶¶ 4 -19.)

LLI itself classifies all Store Managers as "exempt." LLI cannot, on the one hand, argue that all Store Managers are "exempt" from overtime wages and, on the other hand, argue that the Court must inquire into the job duties of each Store Manager in order to determine whether

- 12 -

1  that individual is "exempt." Any such argument from LLI would ignore the fact that Plaintiff

2  Chavez is challenging Defendant's policy of classifying all Store Managers as "exempt."

3  "Common questions may predominate where the resolution of a question common to the class

4  would significantly advance the litigation." Romero v. Producers Dairy Foods, Inc., 235 F.R.D.

5  474, 489 (E.D. Cal. 2006). Thus, class action are "particularly apt" if a common defense is

6  potentially applicable to the class claims. Id. at 490. This is because '[i]f the defense succeeds,

7  the entire litigation is disposed of. If it fails, it will not be an issue in the subsequent individual

8  trials." Id. (quoting In re Agent Orange Prod. Liab. Litig., 818 F. 2d 145, 167 (2nd Cir. 1987).

9        LLI likely will assert at least two common affirmative defenses, if not more, such as the

10  managerial/executive exemption and the commissioned sales exemption. Both are amenable to

11  class treatment. Defendant has the burden of proving that certain employees are exempt from

12  California's wage and overtime protections, as the application of an exemption to overtime

13  wages is an affirmative defense. See Ramirez v. Yosemite Water Co. Inc., 20 Cal. 4th 785, 794-

14  95, Cal. Rptr. 2d 844 (1999) (citing Corning Glass Works v. Brennan, 417 U.S. 188, 196-97, 94

15  S. Ct. 2223, 41 L. Ed. 2d 1 (1974)); Nordquist v. McGraw-HillBroadcasting Co., 32 Cal. App.

16  4th 555, 562, 38 Cal. Rptr. 2d 221 (1995); see also, Vizcaino v. United States District Court,

17  173 F.3d 713, 722 (9th Cir. 1999) (holding common question presented by employees who

18  claimed to have been denied benefits to which they were entitled as common law employees);

19  Morillion v. Royal Packing Co., 22 Cal. 4th 575, 94 Cal. Rptr. 2d 3, 995 P.2d 139 (2000)

20  (reversing dismissal of class action lawsuit by agricultural workers to recover pay for time

    spent commuting to fields on employer's buses).

21        Typicality: Plaintiff Chavez's claims are typical of other LLI's Store Managers' claims,

22  in that all LLI California stores were staffed with a few as employees as possible as a common

23  policy, and at least seven other Store Managers already attest to spending the majority of each

24  work day on manual work duties much like Chavez. (See Declarations in Support of Class

25  Cert., generally, ¶¶ 12-14). LLI itself testified that it did not matter who loaded and unloaded

26  the trucks, whether the manager or another employee, "it has to get done":

27        Q:    My question just was whether loading and unloading truck
              was one of his [Plaintiff Chavez's] job responsibilities.
28        A:    Not directly.

1

Q:    Indirectly?
A.    Indirectly it has to get done. I don't really care who does it.

2

3    (LLI Dep. II, p. 204: 12-17 ["Plaintiff Chavez" added].) California courts have shifted the

4    burden of proof to employers when inadequate records prevent employees from proving their

5    claims for unpaid overtime hours. (Hernandez v. Mendoza, 199 Cal.App.3d 721, 726–728,245

6    Cal. Rptr. 36, [1988]) and unpaid meal and rest breaks (Cicairos v. Summit Logistics, Inc., 133

7    Cal.App.4th 949, 961–963 [35 Cal. Rptr. 3d 243] [2005]). For example, class action plaintiffs

8    have proved their damages for unpaid overtime by the use of statistical sampling. (Bell v.

9    Farmers Ins. Exchange, 115 Cal.App.4th 715, 746–751 [9 Cal. Rptr. 3d 544] [2004].) Given the

10   common staffing and common business goals of LLI for its California stores, and the

11   interchangeability of Store Managers between stores, Plaintiff Chavez's claims are typical of

12   the others' claims.

     Adequate Representation: Plaintiff Chavez has shown an interest in adequately

13   representing all other Store Managers in that he worked at LLI for the majority of the class

14   period, from 2000 to April 2009, and he has testified for seven hours showing much more than

15   a generalized "understanding of the allegations" at issue in this case. Gibbs Properties Corp.,

16   supra, 196 F.R.D. at 436. Proposed class counsel's experience with multiple employment law

17   class actions are set forth in the supporting Declaration of David A. Garcia.

18         2.    Rule 23(b)

19         Because common questions—such as, Plaintiff's job requirements, Defendant's realistic

20   expectations regarding Store Managers' job requirements, whether Defendant had a policy and

21   practice of having Store Managers work without overtime pay, which of the tasks performed by

22   Plaintiff are "managerial" or sales tasks for the purposes of any exemption analysis, whether

23   Plaintiff is exempt from overtime under as a "Manager" or commissioned-sales person—all

24   present a significant aspect of this case and they can be resolved for all members of the class in

25   a single adjudication, such that there is clear justification and efficiency for handling the

26   dispute on a representative rather than on an individual basis. Hanlon, 150 F.3d at 1022. The

27   "amount of damages is invariably an individual question and does not defeat class action

28   treatment." Mateo v. V.F. Corp., 2009 U.S. Dist. LEXIS 105921, at *17 (N.D. Cal. Oct. 27,

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS ACTION CERTIFICATION

2009) (quoting Blackie v. Barrack, 524 F.2d 891, 905 (9th Cir. 1975).

## B.   UNPAID OVERTIME CLASS II

Under California law, plaintiffs are entitled to "no less than one and one-half times the regular rate of pay" for work in excess of eight hours in one workday. (Lab. Code, § 510, subd. (a); Cal. Code Regs., tit. 8, § 11070, subd. (3)(A)(1)(a) [Wage Order 7-2001]; see generally Morillion, supra, 22 Cal.4th at 592 [state law may afford employees greater protection].) Because the regular rate is calculated by dividing the hours worked in a week by *all* compensation earned for that week, if the employee is later given a bonus that is partly due to the work performed in that week this additional pay must be added into the total compensation for the week (i.e., where a regular bonus payment is considered a part of the regular rate at which an employee is employed, it must be included in computing his regular hourly rate of pay and overtime compensation):

> When the amount of the bonus can be ascertained, it must be apportioned back over the workweeks of the period during which it may be said to have been earned. The employee must then receive an additional amount of compensation for each workweek that he worked overtime during the period....

Marin v. Costco Wholesale Corp., 169 Cal. App. 4th 804, 807 (2008), quoting, 29 C.F.R. § 778.209(a).) LLI failed to apportion back additional compensation to compensate for his bonuses.

### 1.   Rule 23(a)

Commonality: Defendant had a common policy during the Class Period not to include bonuses/commissions in computing their "regular rate" of pay. Because this motion seeks certification on behalf of at least 130 "nonexempt" employees those individuals share a common issue with Plaintiff Zaldivar with regard to the underpayment of overtime to him. That is because: Between July 2007 and June 2010, Plaintiff Zaldivar was a non-exempt employee of defendant, Lumber Liquidators. During that time, Plaintiff regularly worked more than 40 hours per week, but did not receive the appropriate amount of overtime pay. (Earnings Statements, D; Zaldivar Decl. ¶¶ 4). From July 2007 to June 2010 LLI failed to include $12,282.87 paid as a "Sales Bonus" to Zaldivar in his rate of pay when it calculated his

1   overtime rate. (See Zaldivar Earning Statements, Exh. D.) Similarly, Plaintiff Chavez was

2   classified as "exempt" and not paid overtime wages by LLI throughout the class period.

3       LLI's nationwide pay policy applies to "all employees," and pay must include "earnings

4   for all work performed." (See Defendant's Pay Period Policy, p. 21 of its Employee Handbook,

5   attached as Exh. "E" to Garcia Decl.) From September 2005 to the present, Lumber Liquidators

6   has operated a common nationwide procedure for calculating and paying those overtime wages.

7   LLI employs the same timekeeping policy, which is included in its employee handbook, for its

8   stores in every state. (LLI Depo. 28:1 to 30:10; 30:18-33:14.)  Lumber Liquidators used

9   uniform, preprinted timesheets designed to accept specific date and time information. (LLI

10  Depo. 39:11-14; 58:14 -23.) The electronic timekeeping process, introduced as noted above, in

11  April 2010, is also uniform nationwide. (LLI Depo. 63:11; 64:5-25.)

12      Like Plaintiff, all California stores were subject to Defendant's business strategy of

13  growing its business by underpaying employees on their proper overtime pay. (See, e.g.,

14  Plaintiff's Request for Judicial Notice of Lumber Liquidators, Inc.'s SEC Form 10-K filing for

15  FY 2008, page 5: "A typical store staff consists of a ... compensation structure generally

16  weighting sales-driven bonuses over a relatively low base salary." Employees were subject to

17  Lumber Liquidators' standardized training for associates:  "we have a formal standardized

18  training program for all of our store associates" (Id.)  As detailed above, in the Factual

19  Background, in June 2010, after this lawsuit was filed, Lumber Liquidators acknowledged its

20  nationwide undercalculation of overtime rates of pay, by incorporating its employees overtime

21  bonus with the overtime for hours worked, and adding a new item on its pay stubs for "bonus

22  overtime." (LLI Depo. 84:21-90:9; 85:15-24; see also, 86:8 to 89:23; 127:3 to 19; attached as

23  Exh. "A" to Garcia Decl.)

24      Typicality: Plaintiffs' claims are typical of up to 43 "Store Managers" and 130 "non-

25  exempt" employees' claims because all were subject to the common pay practice of LLI, and

26  the determination of the amount of any "bonus/commission" that must be apportioned to their

27  owed overtime wages can be ascertained by examining their Earnings Statements, much like

28  Plaintiff Zaldivar.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS ACTION CERTIFICATION

1        <u>Adequate Representation</u>: As detailed above, Plaintiffs testified at length about the core

2    issue to be determined regarding this claim—whether LLI improperly failed to incorporate

3    "bonuses"/commissions in calculating their overtime rate of pay—such that they should be

4    deemed adequate representatives for this proposed class.

5              2.     Rule 23(b)

6        Adjudication of the common issues related  to this claim, whether Zaldivar's "bonus"

7    was paid in workweeks when he earned overtime wages and whether such bonus should have

8    been apportioned to back pay owed for unpaid overtime wages, "will help achieve judicial

9    economy" and avoid scores of individuals cases on the same issue, and should be certified for

10   these reasons. <u>Valentino</u>, 97 F.3d at 1234.

11       **C.**    **MISSED MEAL PERIOD CLASS**

12       California Labor Code § 512 generally requires employers to provide employees with

13   meal periods of at least thirty minutes at intervals depending on the number of hours worked in

14   a given day. Cal. Labor Code § 512(a). In turn, California Labor Code § 226.7 states that no

15   employer shall require any employee to work during any meal period established by an

16   applicable IWC Wage Order. Section 226.7 also mandates one additional hour of pay at the

17   employee's regular rate of compensation for each work day that a meal period is not provided in

18   accordance with an applicable IWC Wage Order. Cal. Labor Code § 226.7(b).

19       Under California's meal period provisions, "[i]t is an employer's obligation to ensure

20   that its employees are free from its control for thirty minutes, not to ensure that employees do

21   any particular thing during that time." <u>Brown v. Federal Express Corp.</u>, 249 F.R.D. 580, 585

22   (C.D. Cal. 2008) (applying Murphy v. Kenneth Cole Productions., Inc., 40 Cal. 4th 1094, 1104,

23   56 Cal. Rptr. 3d 880, 155 P.3d 284 (2007)).

24             1.     Rule 23(a)

25       <u>Commonality & Typicality</u>: Plaintiffs claim that LLI's state-wide policies and business

26   practices, understaffing stores and opening stores for more than 60 hours per week, Mondays

27   through Sundays, and requiring that they service customers required them to remain on the

28   premises, close to the show room, to respond to phone calls and customers' questions

- 17 -

1  throughout their shifts, to remain responsible for pushing the sales of wood flooring, and to

2  refrain from engaging in common break-time activities, deprived them of off-duty thirty-minute

3  meal periods. (See Declarations in Support of Class Cert. Motion, ¶¶10-16.) Essentially,

4  Plaintiffs claim that LLI never staffed stores properly to allow the Store Employees to take an

5  off-duty meal break and, thus, they and the other 130+43 LLI employees are entitled to

6  payment of an hour's premium wage for each missed meal break. In this respect, the common

7  issues presented by Plaintiffs' claims plainly predominate over any individual issues.

8       These issues are amenable to class treatment. <u>Madera Police Officers Ass'n v. City of</u>

9  <u>Madera</u>, 36 Cal. 3d 403, 204 Cal. Rptr. 422, 682 P.2d 1087 (1984) (concluding that a class of

10  city police officers, sergeants, and dispatchers were entitled to compensation for overtime hours

11  worked as a result of the limitations placed on their activities and conduct during mealtime

12  periods); <u>Los Angeles Fire Police Protective League v. City of Los Angeles</u>, 23 Cal. App. 3d

13  67, 99 Cal. Rptr. 908 (1972) (holding that whether lunch periods constitute on-duty time given

14  constraints generally applied to employees during those periods was a common question of law

15  supporting class certification).

16       <u>Adequate Representation</u>: Both Plaintiffs worked for LLI for substantial periods of

17  time, at various stores, with multiple employees, and both of their missed meal break

18  allegations echo those of the other Declarants. In short, both should be deemed adequate class

19  representatives for this claim.

         2.    Rule 23(b)

20       As detailed above, to determine whether the predominance requirement is satisfied,

21  "courts must identify the issues involved in the case and determine which are subject to

22  'generalized proof,' and which must be the subject of individualized proof." <u>In re Dynamic</u>

23  <u>Random Access Memory (DRAM) Antitrust Litig.</u>, 2006 U.S. Dist. LEXIS 39841, 2006 WL

24  1530166, at *6 (N.D. Cal.) (Courts have held that, at the certification stage, plaintiffs have a

25  limited burden with respect to showing that individual damages issues do not predominate).

26       Plaintiffs will be able to provide generalized evidence of LLI's unlawful meal period

27  policies and practices at their stores with proof of Defendants' written policies and deposition

28  testimony of LLI representatives. A class action is a superior method to resolve the dispute

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS ACTION CERTIFICATION

because over a hundred individual claims would exhaust judicial resources and use time inefficiently. It is also unlikely that many LLI employees in this proposed class would have sufficient incentive to pursue their claims as individuals.

### D.   UNPAID REIMBURSEMENT CLASS

California Labor Code section 2802 requires an employer to reimburse employees for amounts expended in carrying out the duties of their employment. Section 2802 applies to claims and liabilities resulting from the employees' acts within the course and scope of their employment. Edwards v. Arthur Andersen LLP, 44 Cal. 4th 937, 952, 81 Cal. Rptr. 3d 282, 189 P.3d 285 (2008) (internal quotation marks omitted). Under Section § 2802, if the employer either knows or has reason to know that the employee has incurred a reimbursable expense, it must exercise due diligence to ensure that each employee is reimbursed. Stuart v. Radioshack Corp., 641 F Supp 2d 901 (2009, N.D. Cal.; Judge Chen).

As a matter of law, any unique waiver defense is not applicable to this § 2802 claim. See Cal. Lab. Code § 2804 (providing that "[a]ny contract or agreement, express or implied, made by any employee to waive the benefits of this article or any part thereof, is null and void, and this article shall not deprive any employee or his personal representative of any right or remedy to which he is entitled under the laws of this State"); see also Cal. Civ. Code § 3513 (stating that "[a]ny one may waive the advantage of a law intended solely for his benefit [b]ut a law established for a public reason cannot be contravened by a private agreement"); Covino v. Governing Board, 76 Cal. App. 3d 314, 322-23 (1977) (stating that "a law established for a public reason cannot be waived or circumvented by a private act"; thus, rejecting plaintiff-appellant's contention that § 3513 was not applicable to the waiver that he had made (thus rendering his waiver valid) because his waiver "was made in open court and not effected by way of an agreement as provided by the code"; "the validity of a waiver of rights which were enacted for a public reason should not depend on the happenstance whether the waiver was incorporated in an agreement or pronounced in the course of a judicial proceeding.")

#### 1.   Rule 23(a)

Numerosity: Here, the proposed class consists of potentially 43 "Exempt" plus 130 "non-exempt" individuals.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Commonality: Plaintiffs Chavez and Zaldivar, and other current and former employees, Mike Hammit, Robert Kijewski, Jason McMillan, Andrew Owens, Rene Rodriguez, Jeff Wootton, Joel Villasenor, working at LLI stores in Albany, Commerce, the City of Industry, Ontario, Rancho Cucamonga, San Diego, San Jose, Santa Ana, Ventura, West Los Angeles Stores, all attest to using their personal vehicles and personal cellular phones to perform their jobs as regularly required by LLI, without any reimbursement by LLI for such personal expenditures.

Here, common questions do predominate over any individualized inquiry. LLI's understaffing at each Store was uniform throughout its California stores, and Store Managers had no discretion not to drive their personal vehicles for business errands when LLI required that they perform these duties on a regular basis. Regardless of LLI's limited reimbursement policy, it did not allow its California employees to seek reimbursement of personal monies they spent performing their jobs for LLI.

Typicality: Plaintiff Chavez's reimbursement claim is "reasonably co-extensive with those of absent class members" and his claim "need not be substantially identical" to everyone else's reimbursement claim. Hanlon, 150 F.3d at 1020. LLI's failure to reimburse Plaintiff Chavez is typical of all the other employee claims who used their vehicles for the same LLI business purpose of inspecting competitors' pricing and taking deposits to the bank. As a matter of business practice LLI failed to reimburse Plaintiff Chavez and the proposed class members for their personal expenditures on the latter costs.

Adequate Representation: Plaintiff Chavez is an adequate representative because he has more than a "basic understanding about the nature of the suit," Byes, supra, 173 F.R.D. 421, 427-28, in that he alleges that LLI never reimbursed him for his gas and personal expenditures spent on making deliveries to the banks and similar trips, (Chavez Depo. 187:2-7; Chavez Decl. 6), very similar to the claims of the other Declarants that LLI never paid them for their expenses when they performed job-related travel tasks for LLI in their personal vehicles.

2.    Rule 23(b)

LLI's failure to reimburse and whatever limited reimbursement policy it did have, is amenable to class treatment. Cf. Alba v. Papa John's USA, No. CV 05-7487 GAF (CTx), 2007

- 20 -

U.S. Dist. LEXIS 28079, at *33-36 (C.D. Cal. Feb. 7, 2007) (examining whether standardized policies and practices used by defendants prevented store managers from exercising discretion and/or independent judgment). Significantly, LLI's stated business strategy of understaffing stores and the allegations of the SAC and the Declarations of LLI employees suggest that vehicle trips were generally not considered reimbursable.

So long as common questions predominate a class action will be a superior method of adjudication and the four criteria listed in (A)-(D) counsel in favor of certification. The key issue is thus predominance. "'The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" <u>Hanlon</u>, 150 F.3d at 1022**Error! Bookmark not defined.**.

The fact that Store Managers may have had some discretion to seek some reimbursements does not change the fact that the central issue in this case is whether there was a failure to reimburse, which would constitute a violation of the California Labor Code. That is, the issue is not why employees were not reimbursed but whether they were. That legal issue— the legality of failing to reimburse employees for their out-of-pocket expenditures— predominates this proposed class. Determining who in fact was reimbursed and who was not will be a straightforward factual question that informs the remedy, and will likely be resolved by documents and by evidence from the named-Plaintiff of the amount and frequency of his non-reimbursed monies.

### E.    VACATION CLASS

The right to vacation pay under California law is a vested right and therefore un-waivable under Labor Code section 227.3. (<u>See</u> <u>Suastez v. Plastic Dress-Up Co.</u>, 31 Cal.3d 774, 780, 784 [183 Cal. Rptr. 846, 647 P.2d 122] (1982).)

#### 1.    Rule 23(a)

<u>Numerosity</u>: The proposed class consists of a pool of former LLI employees of the 43 "Exempt" plus 130 "non-exempt" persons who have not been paid their vacation pay by LLI.

<u>Commonality, Typicality and Adequacy, 23(b)(3)</u>: Plaintiff Chavez alleges that LLI did not pay his accrued vacation wages owed since he began working at LLI in the year 2000. (See Chavez E-mail to LLI, attached to the Decl. of Chavez.) Determining whether LLI owes

- 21 -

1   Chavez and other employees as vacation pay will involve a simple examination of LLI's pay

2   records, to determine the owed and paid vacation time, as well as the applicable vacation pay

3   policy rate. California Labor Code section 227.3 merely provides that if an employer

4   promises—by contract or policy—to give its employees paid vacations, the employer must pay

5   an employee wages for all "<u>vested vacation time</u>" he has accrued but not taken at the time of

6   his termination. The statute does not specify the manner in which the employee must have

7   accrued this time. Therefore, if the entitlement to paid vacation leave in general is given to

8   employees in a contract or policy, the employer must pay the employee wages, in accordance

9   with the contract or policy, for accrued vacation time. (L.C. § 227.3.) It is settled that "[p]aid

10  vacation provided by an employment agreement vests as the employee labors. [Citation.]"

11  (<u>Boothby v. Atlas Mechanical, Inc.</u>, 6 Cal.App.4th 1595, 1597 [8 Cal. Rptr. 2d 600] [1992].)

12  Unused vacation accumulates unless the employment agreement legally prevents it." (Id. at p.

13  1598.) Accordingly, the examination of LLI's payroll documents under this claim is perfectly

14  amenable to class treatment, efficient, and the most superior way to adjudicate LLI's employees

15  rights to unpaid vacation. Only the amounts may vary between proposed class members; the

16  legal claim of entitled to vacation is the same. Plaintiff Chavez who previously asked for his

17  unpaid vacation even while still working for LLI before this case was filed, should be deemed

    an adequate representative of this proposed class.

18  **VI.     RULE 23(b)(2) CERTIFICATION**

19          The SAC alleges that, as a matter of policy and practice, among the violations of Labor

20  Code § 226, LLI failed to keep accurate records of Plaintiffs' and the proposed class members

21  rates of overtime pay, meal periods taken, total overtime hours worked, net wages earned,

22  and/or daily or weekly overtime pay. (SAC ¶¶66-68). Accordingly, Rule 23(b)(2) certification

23  of all the classes listed above is appropriate since Plaintiffs will be seeking injunctive relief to

24  order LLI to account accurately for the proposed class members' work time. As such, under

25  Rule 23(b)(2), certification is appropriate since LLI's conduct in not properly listing all the

26  L.C. 226 requirements, justifying injunctive or declaratory relief Section 226. At this state of

27  the proceedings, the Court must accept the factual allegations in the complaint as true. <u>Blackie</u>,

28  <u>supra</u>,  524 F.2d 891, 901 n.17.

1

## VII.   CONCLUSION

2

3          Plaintiff has established a group of common questions involving employees who

4   worked extraordinary amounts of hours and who were underpaid, per Lumber Liquidator's

5   stated policy and practice, throughout the relevant time period. Lumber Liquidators in fact

6   favored its commission/bonus schedule "over" a "relatively low base salary." Certification is an

7   effective case management tool, allowing the Court to control the notice procedure, the

8   definition of the class, and the common adjudication of all common issues.

Dated:  December 30, 2011                    TAFOYA & GARCIA, LLP

9

10                                           By:_____/s/_____
                                                        David A. Garcia

11                                           Attorneys for Plaintiff CRECENSIO
                                             CHAVEZ and JOSE ZALDIVAR

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS ACTION CERTIFICATION