1   ROBERT TAFOYA, Esq. [California Bar No. 194444]
    robert@tafoyagarcia.com
2   DAVID GARCIA, Esq. [California Bar No. 218356]
    david@tafoyagarcia.com
3   TAFOYA & GARCIA LLP
    316 W. 2ND St., Ste 1000
4   Los Angeles, CA 90012
    Telephone: (213) 617-0600
5   Facsimile: (213) 617-2226

6   Attorneys for Plaintiffs,
    CRELENCIO CHAVEZ and JOSE ZALDIVAR
7

8

9                   **UNITED STATES DISTRICT COURT**

10                 **NORTHERN DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12  CRELENCIO CHAVEZ and JOSE ZALDIVAR, an individual and on behalf of all others similarly situated, | Case No.  C-09-04812 SC |
| 13 | **PLAINTIFF JOSE ZALDIVAR'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 14                     Plaintiff, | |
| 15                v. | |
| 16  LUMBER LIQUIDATORS, a Delaware corporation; and DOES 1 through 10, | |
| 17  inclusive,, | [Concurrently filed with Declaration of David Garcia; the Joint Stipulation of Class Action Settlement; [Proposed] Order] |
| 18                     Defendant. | |
| 19 | Date:  January 9, 2015 |
| 20 | Time:  10:00 a.m. Dept.  Courtroom 1, 17th Floor |
| 21 | Complaint filed: September 3, 2009 |

22

23   //

24   //

25   //

26   //

27   //

28

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 9, 2015, at 10:00 a.m. or as soon thereafter as this matter may be heard by the above-referenced Court, located at 450 Golden Gate Avenue, San Francisco, California, 94102, Courtroom 1, 17th Floor, the Honorable Samuel Conti presiding, Plaintiff Jose Zaldivar ("Plaintiff") will, and hereby does, move this Court to:

1. Preliminarily approve the settlement described in the Joint Stipulation of Class Action Settlement, Notice of Class Action Settlement, and Claim Form, attached collectively as Exhibit 1 to the Declaration of David Garcia.

2. Approve distribution of the proposed Notice of Class Action Settlement and Claim Form to the Settlement Class;

3. Appoint Jose Zaldivar as the Class Representative;

4. Appoint Tafoya & Garcia LLP as Class Counsel;

5. Appoint CPT Group as the Claims Administrator; and

6. Set a hearing date for final approval of the settlement.

This Motion is made pursuant to Rule 23 of the Federal Rules of Civil Procedure and is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement, the Declaration of David A. Garcia, the Joint Stipulation of Class Action Settlement, the records, pleadings and papers on file in this action, and upon such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing on this Motion.

Dated: November 17, 2014                    **TAFOYA & GARCIA, LLP**


                                            By:    /s/ *David A. Garcia*
                                                        David A. Garcia

                                            Attorneys for Plaintiffs,
                                            CRELENCIO CHAVEZ and JOSE
                                            ZALDIVAR

# TABLE OF CONTENTS

I.      INTRODUCTION ...........................................................................................1

II.     FACTS AND PROCEDURAL HISTORY ...................................................2

     A.      Overview of the Litigation ...............................................................2

     B.      The Parties Settled After Mediation ..............................................4

III.    The Proposed Settlement Fully Resolves the Claims of Plaintiff AND THE CERTIFIED CLASS .....................................................................................5

     A.      Composition of the Settlement Class...............................................5

     B.      Settlement Consideration .................................................................5

          1.      Class Representative Service Payment ....................................5
          2.      Requested Award of Class Counsel Attorneys' Fees and Costs ...........6
          3.      Administration Costs................................................................6
          4.      Private Attorney General Act Payment...................................6
          5.      Applicable Taxes ......................................................................6

     C.      Calculation of Class Member Settlement Payments.......................7

     D.      Release by the Settlement Class.......................................................9

IV.     THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL...........9

     A.      Standards for Settlement Approval. ................................................9

     B.      The Proposed Settlement is Fair, Reasonable, and Adequate And Reached Through Arm's Length Bargaining in Which All Parties Were Represented by Experienced Counsel ...............................................................10

     C.      The Proposed Settlement is Reasonable Given the Strengths of Plaintiff's Claims and Risks and Expense of Litigation.....................................12

     D.      The Proposed PAGA Settlement is Reasonable. .............................15

V.      THE CLASS NOTICE ...............................................................................15

VI.     THE COURT SHOULD SCHEDULE A FAIRNESS HEARING...............17

VII.    CONCLUSION ...........................................................................................17

1

## **TABLE OF AUTHORITIES**

2

### **CASES**

3

*Acosta v. Trans Union LLC*, 243 F.R.D. 377, 383 (C.D. Cal. 2007)................................................10

*Armstrong v. Bd of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 314 (6th Cir. 1980).........11

*Brown v. Nipper Auto Parts and Supplies, Inc.*, 2009 WL 1437836, at ** 1, 7 (W.D. Va. May 21, 2009) ...............................................................................................................................1, 7, 15

*Contreras v. United Food Group, LLC.*, Case No. BC389253 (L.A. County Super. Ct.)................9

*Fukuchi v. Pizza Hut*, Case No. BC302589 (L.A. County Super. Ct.).............................................9

*Gomez v. Amadeus Salon, Inc.*, Case No. BC392297) .....................................................................9

*Hammon v. Barry*, 752 F. Supp. 1087 (D.D.C. 1990) .....................................................................12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) ....................................................11

*Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS 33900, at *24 (N.D. Cal. Apr. 3, 2009) ....................................................................................................................17

*In re Cendant Corp. Derivative Action Litig.*, 232 F. Supp. 2d 327, 336 (D. N.J. 2002)...............17

*In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) ......................13

*In re Immune Response Secs. Litig.*, 497 F. Supp. 2d at 1174...........................................................13

*In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000)......................................6

*In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993)..........................19

*In re Tableware Antitrust Litigation,* 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) ......................2

*Lim v. Victoria's Secret Stores, Inc.*, Case No. 04CC00213 (Orange County Super. Ct.)...............9

*Linney v. Cellular Alaska P'ship*, Nos. C-96-3008 DLJ, C-97-0203 DLJ, C-97-0425 DLJ, C-97-0457 DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997)....................................................13

*Linney*, 1997 WL 450064, at *5 ......................................................................................................13

*Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 682 (7th Cir. 1987)...........................................................................................................................................12

*Mendoza v. United States*, 623 F.2d 1338, 1351 (9th Cir. 1980) ....................................................19

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)....................................18

*Nordstrom Com. Cases*, 186 Cal.App.4th 576, 579 (2010)............................................................17

*Officers for Justice v. Civil Service Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)............................................................................................................................12

28

MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT
CASE NO.: C-09-04812 SC

*Officers for Justice*, 688 F.2d at 625.................................................................................14

*Pridd v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989) ...................................................12

*Ressler v. Federated Department Stores, Inc.*, Case No. BC335018 (L.A. County Super. Ct.) ......9

*Sandoval v. Nissho of Cal., Inc.*, Case No. 37-2009-00091861 (San Diego County Super. Ct.) ......9

*Silber v. Mabo*, 18 F.3d 1449, 1454 (9th Cir. 1994)........................................................17

*Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal.)...............................9

*Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) .................................................11

*Strawder v. Pacific Sunwear Store Corp.*, 2009 WL 1360374 (2009) ............................................15

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ............................................10

*Zator v. Sprint/United Mgmt. Co.*, 2011 WL 1157527, at *4 (S.D. Cal. Mar. 29, 2011)...............14

*Zator*, 2011 WL 1157527 ............................................................................................15

### STATUTES

29 U.S.C. § 207.3(e)(3).................................................................................................15

FRCP, Rule 23(e)........................................................................................................11

Labor Code § 203 .........................................................................................................7

### OTHER AUTHORITIES

Manual for Complex Litigation § 1.46, at 53-55 (West 1977) .......................................................11

MANUAL FOR COMPLEX LITIGATION SECOND states at § 30.44 (1985)............................................10

DB1/ 81212522.2

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     INTRODUCTION**

Plaintiff Jose Zaldivar ("Plaintiff") seeks preliminary approval of the Joint Stipulation of Class Action Settlement ("Settlement"), which, if approved, would provide significant monetary relief for more than approximately 240 current and former employees of Defendant Lumber Liquidators, Inc. ("Defendant").

The basic terms of the Settlement provide for the following:

1)  A Settlement Class defined as:  All current and former retail store employees of LLI classified as non-exempt and employed in California who were paid overtime wages and commission/sales bonus wages and/or other nondiscretionary compensation between September 3, 2005 through the present.  The Class includes, but is not limited to, persons employed in the following position categories and/or job titles: warehouse associate, sales associate, Assistance Store Manager 1, Assistant Store Manager 2, and other non-exempt retail store employees.

2)  A Maximum Settlement Amount of $140,000.  The Maximum Settlement Amount shall be allocated as follows:

   a.  Requested attorneys' fees and costs of 30% (or $42,000) to Tafoya & Garcia LLP;

   b.  A $7,500 payment to the California Labor Workforce Development Agency ("LWDA") pursuant to the California Labor Code Private Attorneys' General Act ("PAGA");

   c.  Claims Administration costs, currently estimated to be $15,000, to be paid to the mutually agreed upon class action claims administrator CPT Group;

   d.  A requested Class Representative Service Payment of $10,000 to Jose Zaldivar for his services on behalf of the Settlement Class (including submitting to a deposition and responding to discovery) and in exchange for his general release of all claims against Defendant; and

MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT
CASE NO.: C-09-04812 SC

e. An estimated Net Settlement Pool of $65,500, which will be available to pay claims by Participating Class Members based on (i) the number of overtime hours worked and amount of commission/sales bonus wages the Participating Class Member was paid and (ii) a pro-rata basis according to the number of hours each Class Member worked during the Class Period;

An objective evaluation of the Settlement confirms that the relief negotiated on behalf the Class is fair, reasonable, and valuable. The proposed Settlement is well "within the range of possible approval," such that the Court should grant preliminary approval, authorize notice to the Class, and schedule a final approval hearing. *See In re Tableware Antitrust Litigation,* 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Before engaging in settlement negotiations, Plaintiff conducted a substantial amount of discovery, including depositions of Defendant, significant written discovery (including law and motion filings) and a motion for class certification, and fully understood the strengths, weaknesses and risks of proceeding through to trial. The settlement discussions were always at arm's length and overseen by a neutral mediator who was appointed through the Northern District's ADR Program and was familiar with the claims at issue. Further, Plaintiff and the Class are represented by counsel experienced in class action litigation who believe the Settlement is fair, reasonable and adequate. Accordingly, Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement.

## II.    FACTS AND PROCEDURAL HISTORY

### A.    Overview of the Litigation

Plaintiff Zaldivar is a former Assistant Store Manager who worked for Defendant from approximately July 2007 to June 22, 2012 as a nonexempt hourly employee. Plaintiff alleges that Class Members were denied payment of overtime wages, because Defendant did not account for non-discretionary pay or commissions/bonuses when calculating of Class Members' regular rate of pay when paying overtime. (Garcia Decl. ¶ 4.)

On September 3, 2009, Plaintiffs Crelencio Chavez and Jose Zaldivar filed a putative class action complaint against Defendant in the California Superior Court, County of Alameda,

PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

captioned *Crelencio Chavez and Jose Zaldivar, an individual and on behalf of all others similarly situated, v. Lumber Liquidators, Inc., et al.*; Case No. RG09472265. The action was removed to the U.S. District Court for the Northern District Court of California on or about October 3, 2009, and assigned Case No. C-09-04812 SC. (Dkt. Nos. 1-3.)

In January 2010, Plaintiffs filed the currently operative Second Amended Complaint, which contained the following seven claims: (1) failure to pay minimum and overtime wages in violation of California Labor Code § 1194; (2) failure to pay overtime wages in violation of Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207; (3) failure to provide meal breaks and pay premium pay under California Labor Code § 226.7; (4) failure to pay vacation upon termination in violation of Labor Code § 227.3; (5) failure to reimburse business expenses in violation of Labor Code § 2802; (6) failure to provide accurate wage statements in violation of Labor Code § 226; and (7) unfair business practices in violation of California Business & Professions Code §§ 17200, *et seq*. The action was brought on behalf of a proposed class that included current and former non-exempt hourly employees of Defendant in California who received both overtime pay and commission/bonus wages from September 3, 2005 through the present. (Garcia Decl. ¶ 5.)

On December 30, 2011, Plaintiffs Chavez and Zaldivar sought class certification of five proposed classes of former and current employees of Defendant employed in stores in California during the period from September 3, 2005 to the present. (Garcia Decl. ¶ 5; Dkt. No. 51.). In an Order dated March 26, 2012, the Court found that one class represented by Plaintiff Zaldivar -- the "Unpaid Overtime Class" -- met all of the requirements set forth by Rule 23 and granted certification of that class and denied certification of all other proposed classes. Specifically, the Court certified the following "Unpaid Overtime Class":

> [A]ll past and current retail store employees of [Defendant] classified by [Defendant] as non-exempt employees ... and employed in California from September 3, 2005 through the present, who were paid overtime wages and were also paid commission wages and/or other non-discretionary pay or bonuses.

(Dkt. No. 92) The Court was further "satisfied that Plaintiffs and their attorneys w[ould] fairly and adequately protect the interests of the class." (Dt. No. 92)

PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

On May 7, 2013, the Claims Administrator mailed a Notice of Class Action by First Class mail to all individuals who were employed by Defendant in California as a non-exempt store employee who during the same pay period both earned commission/bonus wages and was paid overtime wages from September 3, 2005 to the present. The Notice of Class Action notified Class Members of their right to request to be excluded from the class action before July 6, 2013. Only one of the individuals who received the Notice of Class Action requested to be excluded.

## B. The Parties Settled After Mediation

Through substantial and extensive informal and formal discovery, Defendant provided Plaintiff's counsel with voluminous class data, including hundreds of thousands of rows of data containing actual sales bonus/commission amounts paid and overtime and double-time payments paid to Class Members and the dates on which they were paid and respective pay periods, the number of current and former employees, written policies, records reflecting Plaintiff's time worked, meal period logs, earnings statements, Company bonus/sales commission plans, and other evidence of /commission bonus payments for the Class Period, totaling nearly 6,000 pages of documents. Many of these documents were produced following law and motion briefing and hearing before the assigned Magistrate Judge. The Parties collectively took more than 15 days of deposition, including the deposition of Plaintiff Zaldivar and several other putative class members and also a two-day deposition of Defendant's corporate witness pursuant to Rule 30(b)(6) of the Federal Rule of Civil Procedure.

On June 16, 2010 (Ret. Judge Edward A. Infante) the parties had mediated with a private mediator, which did not result in a settlement. The parties mediated again. On May 21, 2013, the Parties participated in a second day-long mediation with Court-appointed mediator Richard S. Whitmore (who was assigned by the Court's ADR Coordinator). Negotiations continued after that date, and the Parties eventually accepted a mediator's proposal and finalized the terms of their agreement. The mediation and all of the terms of that settlement are contained within the Joint Stipulation of Class Action Settlement filed concurrently herewith. At all times, the Parties' settlement negotiations have been non-collusive, adversarial, and at arm's length.

PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

Discussions between counsel for the Parties, informal discovery, as well as the respective investigation and evaluation of Plaintiff's claims by the Parties, have permitted each side to assess the relative merits of the claims and the defenses to those claims. The Parties agree that the above-described investigation and evaluation, as well as discovery and the information exchanged during the settlement negotiations, are sufficient to assess the merits of the respective Parties' positions and to compromise the issues on a fair and equitable basis.

## III.  THE PROPOSED SETTLEMENT FULLY RESOLVES THE CLAIMS OF PLAINTIFF AND THE CERTIFIED CLASS

### A.  Composition of the Settlement Class

Consistent with the Court's Order dated March 26, 2012, the proposed Settlement Class consists of all current and former retail store employees of Defendant classified as non-exempt and employed in California who were paid overtime wages and commission/sales bonus wages and/or other non-discretionary compensation between September 3, 2005 through the present. This includes, but is not limited to, persons employed in the following position categories and/or job titles: warehouse associate, sales associate, Assistant Store Manager 1, Assistant Store Manager 2, and other non-exempt retail store employees in California. (Settlement Agreement ¶ 2.6).

### B.  Settlement Consideration

Plaintiff and Defendant have agreed to settle the underlying class claims in exchange for the Maximum Settlement Amount of $140,000. (Settlement Agreement ¶ 6.2.1) The Maximum Settlement Amount includes: (1) a net settlement pool of approximately $65,500 from which payments to Class Members shall be made, (2) requested attorneys' fees and costs of $42,000 to Plaintiff's counsel, (3) a $7,500 payment to the LWDA, (4) claims administration costs of approximately $15,000, and (5) a requested $10,000 Class Representative Service Payment to Jose Zaldivar. (Settlement Agreement ¶¶ 6.2.1, 6.3.1, 6.4.1, 6.5.1, 6.6.1)

#### 1.  Class Representative Service Payment

Prior to the deadline for Class Members to object to the Settlement, Plaintiff's Counsel will apply to the Court for a Class Representative Service Payment of up to $10,000.00 for Jose

PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

Zaldivar, as compensation for his services on behalf of the Class. (*See Id.* at Section 6.3) This amount will be in addition to any other recovery to which Plaintiff will be entitled under the Settlement as a Class Member. This payment is intended to recognize the time and effort that Plaintiff Zaldivar has expended on behalf of the Class in assisting Class Counsel with the Class Members' claims, in addition to the exposure and risk he incurred by participating and taking a leadership role in this litigation, and including his submitting to a deposition and responding to written discovery and also in exchange for a general release of all claims, as well as traveling to San Francisco multiple times for mediation (June 2010 and in May 2013). *See In re Mego Financial Corp. Sec. Litig.,* 213 F.3d 454, 463 (9th Cir. 2000) (approving incentive awards to class representatives).

### 2. Requested Award of Class Counsel Attorneys' Fees and Costs

Class Counsel shall apply to the Court for an award of reasonable attorneys' fees and costs not to exceed $42,000.00, which represents approximately 30% of the Maximum Settlement Amount. (See Garcia Decl. ¶¶11-13.) Defendant will not oppose Class Counsel's request for attorneys' fees and costs. (*See Id.* at Section 6.4)

### 3. Administration Costs

The Claims Administrator will be CPT Group. The Maximum Settlement Amount includes the costs of administration of the Settlement, which the Parties estimate will likely not exceed $15,000. (*See Id.* at Section 6.6)

### 4. Private Attorney General Act Payment

Defendant shall pay a total amount of $10,000.00 in settlement of all claims for civil penalties under PAGA. Pursuant to Labor Code section 2699(i), Defendant shall pay 75% of the PAGA settlement amount (i.e., $7,500.00) to the California Labor and Workforce Development Agency. The remaining $2,500.00 shall be included in the net settlement pool available for distribution to the Class Members. (*See Id.* at Section 6.5)

### 5. Applicable Taxes

In addition to the Maximum Payment Amount, Defendant will pay the employer's portion

of payroll taxes, including FICA and FUTA, on the portion of each settlement payment allocated to alleged unpaid wages. (*See Id.* at Section 6.7.2)

### C.   Calculation of Class Member Settlement Payments

Subject to the Court approving attorneys' fees and costs, the payment to the LWDA, claims administration costs, and the Class Representative Service Payment, the Settlement Pool will be available for distribution based upon claims submitted by Class Members. (Settlement Agreement ¶ 2.31). Each Class Member will be entitled to submit a claim for a Settlement Payment. Each Qualified Claimant (a Class Member who has timely submitted a fully and correctly completed and signed and dated Claim Form, or a late Claim Form accepted by Defendant) shall receive a Settlement Payment that includes an amount calculated based on the amount of overtime hours worked and the amount of commission/sales bonus payments that he/she was paid while employed by Defendant in California ("Overtime Settlement Amount"). (Settlement Agreement ¶ 6.7.1(a))  After the  Overtime Settlement Amount is deducted from the Settlement Pool, the remaining portion will be distributed to Class Members on a *pro rata* basis based upon the number of workweeks worked by Class Members ("Eligible Workweeks"). (Settlement Agreement ¶ 6.7.1(b), (c))  All Class Members whose employment terminated prior to the Preliminary Approval Date and after September 3, 2006, will be credited with an additional two (2) Workweeks to recognize the potential recovery of Labor Code § 203 waiting time penalties for those Class Members.  For example, a former employee Class Member who worked for five (5) Workweeks prior to the Preliminary Approval Date but after September 3, 2006 and five (5) Workweeks prior to September 3, 2006 would be credited with twelve (12) Eligible Workweeks (e.g., 5 + 5 + 2).  (Settlement Agreement ¶ 6.7.1(b))  After the Overtime Settlement Amount is deducted from the Settlement Pool, the remaining amount will be divided by the total Eligible Workweeks to produce a dollar amount that will be the value of one Eligible Workweek: (e.g., Settlement Pool minus Overtime Settlement Amount ÷ Total Eligible Workweeks = Workweek Value).  The payment that each Qualified Claimant may receive for his or her Eligible Workweeks (provided he or she timely and properly submits a Claim Form) is determined by

PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

multiplying each Qualified Claimant's individual Eligible Workweeks by the Workweek Value. (Settlement Agreement ¶ 6.7.1(d))

This is a "claims made" settlement. Accordingly, any unclaimed portions of the Settlement Pool shall remain the property of Defendant and will not be paid out to Class Members. (Settlement Agreement ¶ 6.7.5). Payment to the Class Members on a "claims made" basis is the most fair and equitable method of resolving the claims in this case because, unlike a typical alleged misclassification wage and hour class action, a significant portion of the Class Members here has likely suffered no damages at all. (Garcia Decl. ¶ 5). This is not a case involving misclassification in which all employees in a particular job title or classification suffered harm. Many Class Members did not receive both overtime pay and commission/bonus wages in the same pay period between September 3, 2005 through the present or, if they did, their overtime rate of pay properly accounted for commission/bonus wages received. Moreover, any underpayments were commonly small amounts. For example, one Class Member was underpaid only $1.17. Between September 3, 2005 and February 28, 2013, the average net overtime underpayment to each Class Member was approximately $21.13 and the total alleged underpayment of overtime to all Class Members likely does not exceed $21,000. After the Overtime Settlement Amount is deducted from the Settlement Pool, there will be more than approximately $44,000 remaining to be divided between Class Members *pro rata* on a workweek basis for all pay periods for which each Class Member received a pay check. Accordingly, in general, the amounts Class Members will receive are far in excess of any amount they were allegedly underpaid. Thus, the "claims made" nature of this settlement reflects an effort to pay all Class Members some compensation regardless of whether they suffered any damages.

The average net recovery of $269 for Class Members in the present case is comparable to, and actually exceeds the recoveries in, other wage and hour class action settlements approved by California state and federal courts. *See, e.g., Sandoval v. Nissho of Cal., Inc.*, Case No. 37-2009-00091861 (San Diego County Super. Ct.) (average net recovery of approximately $145); *Fukuchi v. Pizza Hut*, Case No. BC302589 (L.A. County Super. Ct.) (average net recovery of

PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

approximately $120); *Contreras v. United Food Group, LLC.*, Case No. BC389253 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Ressler v. Federated Department Stores, Inc.*, Case No. BC335018 (L.A. County Super. Ct.) (average net recovery of approximately $90); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.*, Case No. 04CC00213 (Orange County Super. Ct.) (average net recovery of approximately $35); *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297) (average net recovery of approximately $20.).

### D.   Release by the Settlement Class

In exchange for the Maximum Settlement Amount, Plaintiff and Class Members will agree to release the Released Claims. (Settlement Agreement ¶¶ 2.25, 6.8 *et seq.*) The Released Claims are those that accrued during the period from September 3, 2005 through the Claims Period Deadline. (Settlement Agreement ¶¶ 2.25, 6.8 *et seq.*) However, Class Members who do not submit a Claim Form will not be deemed to have released any claims under the FLSA. (Settlement ¶ 6.8.3)

## IV.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.   Standards for Settlement Approval.

The law favors settlement, particularly in class actions and other complex cases, where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). These concerns apply with particular force in a case such as this, where allegedly illegal practices potentially affected approximately 48 employees, but in relatively small amounts.

Any settlement of class litigation must be reviewed and approved by the court. This is done in two steps: (1) an early (preliminary) review by the court, and (2) a final review after notice has been distributed to the class for their comment or objections. The MANUAL FOR COMPLEX LITIGATION SECOND states at § 30.44 (1985):

> A two-step process is followed when considering class settlements
> … if the proposed settlement appears to be the product of serious,
> informed, non-collusive negotiations, has no obvious deficiencies,
> does not improperly grant preferential treatment to class

PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

representatives or segments of the class, and falls within the range of possible approval, then the court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement.

When parties reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Acosta v. Trans Union LLC*, 243 F.R.D. 377, 383 (C.D. Cal. 2007).

"The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.' This hearing is not a fairness hearing; its purpose, rather is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Bd of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 314 (6th Cir. 1980) (quoting Manual for Complex Litigation § 1.46, at 53-55 (West 1977)). "[T]he district court must assess whether a class exists," i.e., whether the lawsuit qualifies as a class action under Rule 23. *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (reviewing settlement to ensure compliance with requirements of Rule 23(a) and Rule 23(b)(3)).

At the second stage of the approval process, after class members have had an opportunity to object to the settlement, the court makes a final determination whether the settlement is "fair, reasonable and adequate" under Rule 23(e). *See Armstrong*, 616 F.2d at 314; *Staton*, 327 F.3d at 952.

**B.    The Proposed Settlement is Fair, Reasonable, and Adequate And Reached Through Arm's Length Bargaining in Which All Parties Were Represented by Experienced Counsel**

No single criterion determines whether a class action settlement meets the requirements of Rule 23(e). The Ninth Circuit has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors are most important. *See Staton*, 327 F.3d at 959. "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Service Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "'an amalgam of delicate balancing, gross approximations and rough justice.'" *Id.* at 625. The ultimate touchstone, however, is whether "class counsel adequately pursued the interests of the class as a whole." *Staton*, 327 F.3d at 961. As the Ninth Circuit explained in *Officers for Justice*, the district court's role in evaluating a class action settlement is therefore tailored to meet that narrow objective. *Officers for Justice*, 688 F.2d at 625. Review under Rule 23(e) "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Id.* Accordingly, the Ninth Circuit will not reverse a district court's approval of a class action settlement "unless the fees and relief provisions clearly suggest the possibility that class interests gave way to self interest." *Staton*, 327 F.3d at 961.

There is a presumption that the negotiations were conducted in good faith. *Pridd v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989); *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 682 (7th Cir. 1987). Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation. *Hammon v. Barry*, 752 F. Supp. 1087 (D.D.C. 1990). The fact that settlement results from arms' length negotiations following "relevant discovery" creates "a presumption that the agreement is fair." *Linney v. Cellular Alaska P'ship*, Nos. C-96-3008 DLJ, C-97-0203 DLJ, C-97-0425 DLJ, C-97-0457 DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997) (citations omitted); *see also In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases).

In this litigation, the Parties reached a non-collusive settlement following one mediation session with Richard S. Whitmore, an experienced and well-regarded mediator. The Parties agreed to mediate following years of extensive discovery and after conducting an extensive review of information and documents to enable counsel to form informed opinions about the value of the case. Approval of a class action settlement does not require that discovery be

11

exhaustive. *See, e.g., In re Immune Response Secs. Litig.*, 497 F. Supp. 2d at 1174 (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases). The fact that settlement results from arms' length negotiations following "relevant discovery" creates "a presumption that the agreement is fair." *Linney*, 1997 WL 450064, at *5.

The Parties were represented by experienced class action counsel throughout the negotiations resulting in this Settlement. In reaching this Settlement, Plaintiff had the benefit of highly skilled and experienced counsel, as detailed in the Declaration of David Garcia. Plaintiff's counsel has a great deal of experience in wage and hour class action litigation. In addition to representing plaintiffs in wage and hour litigation, Plaintiff's Counsel also have defended major corporations in wage and hour class action cases. (Garcia Decl., ¶ 10-11.) In their view, the Settlement is fair, reasonable, and adequate and is in the best interests of Plaintiff, the Class and Defendant in light of all known facts and circumstances and the expenses and risks inherent in litigation. (Garcia Decl., ¶ 9.)

Defendant was represented by Morgan, Lewis & Bockius LLP, which is one of the premier defense firms in California, with a significant wage and hour defense practice.

### C. The Proposed Settlement is Reasonable Given the Strengths of Plaintiff's Claims and Risks and Expense of Litigation.

Of the many factors courts consider in determining whether to approve a class action settlement, the courts examine the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation and the risk of maintaining class action status throughout the trial. *Officers for Justice*, 688 F.2d at 625.

Plaintiff recognizes that if the litigation had continued, he may have been faced with de-certification of the class claims and/or encountered significant legal and factual hurdles that could have prevented the Class from obtaining any recovery. Defendant contends that the claims should be decertified and strongly denies liability because commissions/bonuses (if any) paid to each Class Member were discretionary and thus properly excluded from the calculation of the regular rate of pay under the FLSA and California law. *Zator v. Sprint/United Mgmt. Co.*, 2011 WL 1157527, at *4 (S.D. Cal. Mar. 29, 2011) (discretionary bonuses are excluded from the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

regular rate of pay under federal and California law; where gift cards were given at the discretion of plaintiff's manager after work was already completed and no evidence was provided by plaintiff of when the cards were awarded, how winners were selected, or how much the cards were worth, court determined the awards did not constitute compensation for the purposes of calculating the regular rate); *Strawder v. Pacific Sunwear Store Corp.*, 2009 WL 1360374 (2009) (only non-discretionary bonuses need to be included in the overtime calculation formula); *Brown v. Nipper Auto Parts and Supplies, Inc.*, 2009 WL 1437836, at ** 1, 7 (W.D. Va. May 21, 2009). An employee's regular rate of pay does not include "sums paid in recognition of services performed during a given period if both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly." *Zator*, 2011 WL 1157527, at *4; *Brown*, 2009 WL 1437836, at ** 1, 7 (where plaintiff received discretionary, quarterly bonuses under certain conditions – i.e., when store's sales percentage was higher in a given month than in month of previous year – but bonuses were not promised beforehand, court held that bonuses were discretionary and not to be included in the FLSA calculation of the plaintiff's regular rate of pay) (*citing* 29 U.S.C. § 207.3(e)(3).)

Defendant contends that Class Members were not eligible for commissions/bonuses under any of Defendant's commission/bonus plans during a portion of the relevant time period and that Store Managers were able to decide, in their sole discretion, whether to disburse any portion of the their own bonus/commission to one or more of the nonexempt employees in the store (i.e., class members) and, if so, in what amount. As a result, the only time Class Members would receive a payment other than their hourly pay prior to March 1, 2007 was entirely dependent upon whether their Store Manager, in his or her discretion, decided to pay them some portion of the bonus/commission that the Store Manager received. Defendant contends that in this case, Store Managers did not share any portion of their commission/bonus with a single class member in 2005, and that in 2006, only six class members both worked overtime and received a

PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

discretionary payment from their Store Manager during the same time period. Moreover, Defendant's commission/bonus plans explicitly stated that they did not constitute a guarantee of payment.

It is usually preferable to reach an early resolution of a dispute because such resolutions save time and money that would otherwise go to litigation. For example, if this action had settled following additional litigation, the settlement amount would have likely have taken into account the additional costs incurred, and there may have been less available for Class Members. As summary judgment and/or trial in this matter loomed, Plaintiff and his counsel would have had to devote considerable time and resources toward refining the theories and arguments, taking additional depositions if necessary (which may have well resulted in additional motion practice to compel such depositions), composing the opposition to summary judgment brief, trial plan, and supporting declarations, assembling and annotating all evidence and exhibits.

Defendant has denied any liability and the propriety of class certification for any reason other than settlement. Continued litigation of this lawsuit presented Plaintiff and Defendant with substantial legal risks that were (and continue to be) very difficult to assess. Under these circumstances, the benefits available to class members in return for releasing their claims against Defendant are fair and reasonable. While the precise amount to be paid in settlement benefits to each class member cannot be determined until expiration of the claims period and depends upon any overtime and commission/bonus wages each Class Member was paid during the same pay period and each Class Member's number of workweeks and timely submission of a claim form, when fees, costs and Class Representative Service Payments are deducted, the average settlement payment available to be claimed by a Class Member is approximately $269, according to confidential data produced by Defendant in this case. The value of this amount compared to the maximum potential recovery reflects a fair compromise well within the range of reasonableness.

By obtaining reasonable value for their claims in light of the substantial risks of litigation, Plaintiff clearly achieved a fair settlement that merits approval. *See In re Cendant Corp. Derivative Action Litig.*, 232 F. Supp. 2d 327, 336 (D. N.J. 2002) (approving settlement which

provided 2% value compared to maximum possible recovery).

### D. The Proposed PAGA Settlement is Reasonable.

Pursuant to the Settlement Agreement, Defendant shall pay a total amount of $10,000.00 in settlement of all claims for civil penalties under PAGA. Defendant shall pay 75% of the PAGA settlement amount (i.e., $7,500.00) to the LWDA. The remaining $2,500.00 shall be included in the settlement pool and distributed to the qualified Class Members. (Settlement Agreement ¶ 6.5). This result was reached after good-faith negotiation between the parties. Where PAGA penalties are negotiated in good faith and "there is no indication that [the] amount was the result of self-interest at the expense of other Class Members," such amounts are generally considered reasonable. *Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS 33900, at *24 (N.D. Cal. Apr. 3, 2009); *see e.g., Nordstrom Com. Cases*, 186 Cal.App.4th 576, 579 (2010) ("[T]rial court did not abuse its discretion in approving a settlement which does not allocate any damages to the PAGA claims.")

## V.   THE CLASS NOTICE

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice practicable" under the circumstances. Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received." *Silber v. Mabo*, 18 F.3d 1449, 1454 (9th Cir. 1994). Notice need only be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, the Parties have jointly drafted the Notice of Class Action Settlement and Claim Form (collectively "Class Notice"), which fairly and neutrally inform Class Members of their rights and remedies in this action. The proposed Class Notice will be mailed to all Class Members by First Class mail and will include information regarding the nature of the lawsuit, a summary of the substance of the Settlement's terms, a Request for Exclusion, or to object to the Settlement, a date for the final approval hearing, the formula used to calculate settlement

payments, and the terms and scope of the Released Claims. (Settlement Agreement, Ex. 1)

Before mailing the Class Notice, the Claims Administrator will verify the addresses produced by Defendant for each Class Member using the National Change of Address Database. (Settlement Agreement ¶ 7.2.1) If any notices are returned as undeliverable, the Claims Administrator will perform a skip trace to ascertain the current addresses of the class members and re-mail notices to them at the updated addresses. This method of notice clearly suffices. Rule 23(c)(2)(B) also sets forth requirements regarding the content of the notice. The notice must concisely and clearly state in plan easily understood language:

1.    The nature of the action;

2.    the definition of the class certified;

3.    the claims, issues, or defenses;

4.    that class member may enter an appearance through counsel;

5.    that the Court will exclude from the class any member who requires exclusion, stating when and how members may elect to be excluded; and

6.    the binding effect of a class judgment on class members under Rule 23(c)(3).

The proposed notice attached as Exhibit 1 to the Settlement Agreement fully complies with Rule 23(c)(2)(B). Courts routinely approve class notices even when they provide only general information about a settlement. *See, e.g., Mendoza v. United States*, 623 F.2d 1338, 1351 (9th Cir. 1980) ("very general description of the proposed settlement" sufficient); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (notice "need only describe the terms of the settlement generally."). The class notice drafted by the Parties provides more than adequate notice about the Settlement.

In accordance with the Settlement Agreement, the Class Notice and Claim Form attached as Exhibits 1 and 2 to the Stipulation will serve as each Class Member's written consent to become a party plaintiff pursuant to Section 216(b) of the FLSA. For the foregoing reasons, both the method of disseminating the Class Notice and content of the Class Notice satisfy the requirements of federal law.

PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

1    **VI.    THE COURT SHOULD SCHEDULE A FAIRNESS HEARING**

2          The last step in the settlement approval process is the fairness hearing, where the Court

3    makes a final determination about the propriety of settlement.  Plaintiff requests that the fairness

4    hearing in this case be scheduled for 180 days after issuance of the Court's Order granting

5    preliminary approval of the Settlement.  Under the Settlement, Defendant must provide a class list

6    to the Settlement Administrator no more than 20 days after the Court issues the preliminary

7    approval order.  Within 30 days of the preliminary approval date, the Claims Administrator must

8    mail out class notice, and class members have 60 days after mailing of the notice to submit

9    claims, exclusions or objections.  Since the final approval hearing must be held at least 35 days

10   after the filing of the final approval motion, the final approval hearing should therefore be

11   scheduled for early July 2015.

12   **VII.    CONCLUSION**

13          The proposed Settlement is fair, reasonable and adequate, was negotiated at arm's length,

14   and presents no obvious deficiencies. Thus, the proposed Settlement falls within the range of

15   possible approval and the Court should grant Plaintiff's Motion for Preliminary Approval.

16   Dated: November 17, 2014                    **TAFOYA & GARCIA, LLP**

17

18                                               By:    /s/ David A. Garcia
                                                              David A. Garcia
19
                                                 Attorneys for Plaintiffs,
20                                               CRELENCIO CHAVEZ and JOSE
                                                 ZALDIVAR
21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

1

## PROOF OF SERVICE

2

3          I, Mildred Murillo, declare: I am and was at the time of the service mentioned in this declaration,
employed in the County of Los Angeles, California.  I am over the age of 18 years and not a party to the within action.
My business address is Tafoya & Garcia LLP, 316 W. 2nd St, Ste 1000 Los Angeles, California 90012.

4

5          On November 17, 2014 I served a copy(ies) of the following document(s):

6          **PLAINTIFF JOSE ZALDIVAR'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF; DECLARATION OF DAVID A. GARCIA ON SUPPORT OF PLAINTIFF JOSE
ZALDIVAR'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; JOINT
STIPULATION OF CLASS ACTION SETTLEMENT**

7

8

9    on the parties to this action by placing them in a sealed envelope(s) addressed as follows:

10   **Eric Meckley,Esq.**
     **Jennifer P. Svanfeldt, Esq.**
     **Morgan, Lewis & Bockius LLP**
11   **One Market, Spear Street**
     **Tower**
12   **San Francisco, CA 94105-1126**

13   ☒    (BY MAIL)  I placed the sealed envelope(s) for collection and mailing by following the ordinary business
            practices of Tafoya & Garcia LLP, Los Angeles, California.  I am readily familiar with Tafoya & Garcia
14          LLP's practice for collecting and processing of correspondence for mailing with the United States Postal
            Service, said practice being that, in the ordinary course of business, correspondence with postage fully
15          prepaid is deposited with the United States Postal Service the same day as it is placed for collection.

16   ☐    BY OVERNIGHT COURIER – I caused the above-referenced document(s) to be delivered via FedEx, an
            overnight courier service, for delivery to the above addressee(s).

17

18   ☐    (BY Electronic Service via the Lexis/Nexis File & Serve Website): Pursuant to the Court Order
            establishing the case website and authorizing the electronic service, documents, I caused such
19          document(s) to be transmitted to the Lexis/Nexis File Serve & website
            (http://www/lexisnexis.com/fileandserve) and hereby served on all designated recipients via such website.

20

21   ☐    BY FACSIMILE: I served by facsimile a true copy of the above-described document. I am "readily
            familiar" with this firm's practice of processing correspondence by fax.  Under that practice documents
22          are placed in our fax machine and are processed and received simultaneously at their destination.  The
            above-referenced document(s) was placed in the fax machine with all costs of faxing prepaid, directed to
23          each party (using their fax number), listed on the attached Service List.  Once the document has been
            transmitted, the fax machine provides a report indicating time of completion

24

25          I declare that I am employed in the office of a member of the bar of this court, at whose direction this service
     was made. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct,
     and this declaration was executed on November 17, 2014 at Los Angeles,
26   California.

27                                                                        Mildred Murillo

28

PROOF OF SERVICE