IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRELENCIO CHAVEZ and JOSE ZALDIVAR, on behalf of all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>LUMBER LIQUIDATORS, INC., and DOES 1 through 20, inclusive,<br><br>　　　　Defendants. | Case No. CV-09-4812 SC<br><br>ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF <u>CLASS SETTLEMENT</u> |

## I.　**INTRODUCTION**

Now before the Court is Plaintiff Jose Zaldivar's ("Zaldivar" or "Plaintiff") motion for preliminary approval of a class action settlement in this case brought under the Fair Labor Standards Act ("FLSA"), the California Private Attorney General Act ("PAGA") and various other state employment laws. ECF No. 150 ("Mot."). Defendants filed a notice of non-opposition, ECF No. 152, and the motion is ripe for disposition without oral argument under Civil Local Rule 7-1(b). For the reasons set forth below, preliminary approval is DENIED.

///

///

## II. BACKGROUND

Lumber Liquidators is a retailer selling flooring products. During the relevant period, Lumber Liquidators had between six and twenty-four retail stores in California, each with a Store Manager and some combination of the following positions: Assistant Store Manager I, Assistant Store Manager II, Warehouse Associate, Delivery Driver, and/or Product Specialist. Store Managers are classified as "exempt" employees, meaning they are exempt from overtime pay requirements. Other employees are classified as "non-exempt," meaning they are eligible for overtime pay.

Zaldivar worked for Lumber Liquidators in City of Industry, California as a non-exempt hourly Assistant Manager.[1] Zaldivar stated that he earned a commission in addition to his hourly pay, but never got a breakdown of the commissions and did not understand how Lumber Liquidators calculated his commission or bonus. From July 2007 to June 2010, Lumber Liquidators paid Zaldivar $12,282.87 as "sales bonuses." Zaldivar claims that Lumber Liquidators failed to include these bonuses into his regular rate of pay when calculating his overtime rate.

As a result, Zaldivar filed suit alleging, among other things, failure to pay overtime wages in violation of California Labor Code ("Labor Code") Section 1194 and 29 U.S.C. Section 207; failure to keep accurate payroll records in violation of Labor Code Section 226; and violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code Section 17200.

The Court subsequently denied class certification for several

---

[1] The other named plaintiffs, Crelencio Chavez and others, were dismissed with prejudice by stipulation. See ECF No. 146.

2

proposed classes, but granted certification for the "Unpaid Overtime Class," defined as:

> [A]ll past and current retail store employees of [Lumber Liquidators] classified by [Lumber Liquidators] as non-exempt employees (including, but not limited to, assistant store managers, sales associates, and warehouse associates), and employed in California from September 3, 2005 through the present, who were paid overtime wages and were also paid commission wages and/or other non-discretionary pay or bonuses.

ECF No. 92 ("Class Cert. Order") at 12.  In essence, Plaintiffs' theory is that Lumber Liquidators failed to account for non-discretionary pay or bonuses when calculating class members' overtime.  Under California law, non-exempt employees are entitled to "no less than one and one-half times the regular rate of pay for an employee" for any work in excess of eight hours in one workday or forty hours in any one workweek.  Cal. Lab. Code § 510(a).  Plaintiffs contend that non-discretionary pay and bonuses were not factored into their "regular rate of pay" for the purposes of overtime calculations.

Following class certification, notice was sent to all individuals who were employed by Lumber Liquidators in California as a non-exempt store employee "who during the same pay period both earned commission/bonus wages and was paid overtime wages from September 3, 2005 to the present."  Mot. at 4.  Only one individual asked to be excluded from the class.

Subsequently, the parties engaged in discovery and reached a settlement with the help of a court-appointed mediator.  Now they seek approval of a class defined somewhat (but not materially) differently:

> All current and former retail store employees of [Lumber Liquidators] classified as non-exempt and employed in California who were paid overtime wages and commission/sales bonus wages and/or other nondiscretionary compensation between September 3, 2005 through the present. The Class includes, but is not limited to, persons employed in the following position categories and/or job titles: warehouse associate, sales associate, Assistant Store Manager 1, Assistant Store Manager 2, and other non-exempt retail store employees.

ECF No. 149 ("Settlement Agreement") § 2.6. This class is made up of approximately 240 current and former employees of Lumber Liquidators. Mot. at 1.

Under the settlement, class members who do not opt-out agree to receive a cash payment in exchange for a release of claims. The released claims include "any and all federal, state, and local law claims related to or pertaining to" an array of potential wage and hour claims accruing prior to the opt-out deadline. Id. § 2.25. Notably, because the FLSA requires individuals to opt in to rather than out of the settlement class, "Settlement Class Members who do not timely opt out of the settlement shall be deemed to have fully released all Released Claims" except FLSA claims. Id.; see also 29 U.S.C. § 216(b); Kakani v. Oracle Corp., No. C 06-06493 WHA, 2007 WL 1793774, at *7 (N.D. Cal. June 19, 2007).

The settlement has a maximum value of $140,000 to be broken down as follows:

- $42,000 in requested attorneys' fees and costs (subject to court approval);
- $7,500 paid to the California Labor Workforce Development Agency ("LWDA") under the PAGA;
- an estimated $15,000 in claims administration costs to be paid to CPT Group, a class action claims administrator;

4

- an incentive award totaling a maximum[2] of $10,000 to lead plaintiff Jose Zaldivar for his work as class representative (in addition to whatever he is entitled as a member of the class); and
- $65,500 to be paid to the class based on (1) the number of overtime hours worked and amount of commission/sales bonus wages paid, and (2) (simplifying somewhat) a pro-rata distribution of any remaining funds according to the number of weeks worked.

This is a so-called "claims made" settlement, and as a result, any unclaimed funds will revert to Lumber Liquidators.

The parties calculate that the average class member will receive $269 from the settlement. According to the parties, this is generous relative to the class members' actual damages, because the average amount each class member was underpaid is $21.13 and the total underpayment "likely does not exceed $21,000." Mot. at 8.

**III. LEGAL STANDARD**

Judicial policy strongly favors settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). "To vindicate the settlement of such serious claims, however, judges have the responsibility of ensuring fairness to all members of the class presented for certification." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). Where the "parties

---

[2] If the Court does not approve the incentive award or grants Zaldivar less than the $10,000, the remaining money will be added to the $65,500 to be paid to the class. See Settlement Agreement § 6.3.1.

5

reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both [1] the propriety of the certification and [2] the fairness of the settlement." Id.

The approval of a class action settlement takes place in two stages. First, the court preliminarily approves the settlement pending a fairness hearing, temporarily certifies a settlement class, and authorizes notice to the class. See Murillo v. Pac. Gas & Elec. Co., 266 F.R.D. 468, 473 (E.D. Cal. 2010). In this Order, therefore, "the court will only determine whether the proposed class action settlement deserves preliminary approval and lay the ground work for a future fairness hearing." Id. (citing Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004) (alterations and internal quotation marks omitted).

"Once the judge is satisfied as to the certifiability of the class and the results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members." Manual for Complex Litigation, Fourth, § 21.633 (2004). At the hearing, the court will entertain class members' objections to (1) the treatment of this litigation as a class action and/or (2) the terms of the settlement. See Murillo, 266 F.R.D. at 473. Following the fairness hearing, the court will reach a final determination as to whether the parties should be allowed to settle the class action pursuant to the terms of the proposed settlement. See DIRECTV, 221 F.R.D. at 525.

///
///

## IV. DISCUSSION

"In the Ninth Circuit, 'named plaintiffs . . . are eligible for reasonable incentive payments.'" Bayat v. Bank of the W., No. C-13-2376 EMC, 2015 WL 1744342, at *10 (N.D. Cal. Apr. 15, 2015) (quoting Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003)). While "[c]lass actions did much justice without [incentive awards] for many decades," Kakani v. Oracle Corp., No. C 06-06493 WHA, 2007 WL 1793774, at *10 (N.D. Cal. June 19, 2007), for better or worse they are now "fairly typical in class action cases." Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 958 (9th Cir. 2009); see also Theodore Eisenberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 UCLA L. Rev. 1303, 1308 (2006) (finding incentive awards were granted in about 28 percent of settled class actions from 1993 to 2002); but see In re Dry Max Pampers Litig., 724 F.3d 713, 722 ("[T]o the extent that incentive awards are common, they are like dandelions on an unmowed lawn -- present more by inattention than by design.").

Incentive awards are typically justified as compensating class representatives for their efforts in the case and are "often taken from the class's recovery." Radcliffe v. Experian Info. Solutions, 715 F.3d 1157, 1163 (9th Cir. 2013). Realistically, however, the class counsel is the true leader in the case, and the class representative's duties are usually modest. See Phillips v. Asset Acceptance, LLC, 736 F.3d 1076, 1080-81 (7th Cir. 2013) (Posner, J.) ("The class representative receives modest compensation . . . for what usually are minimal services in the class action suit, . . . which is in fact entirely managed by class counsel.") (internal citations omitted). Despite the modest duties, such

awards are more justifiable in employment cases like this one because an employee often experiences stigma or retaliation as a result of suing his employer. See Staton, 327 F.3d at 977 (noting one factor relevant to the reasonableness of an incentive award is whether the named plaintiff reasonably feared retaliation at work).

The Ninth Circuit requires district courts to be "vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." Radcliffe, 715 F.3d at 1164. Among other things, the concern about incentive awards and the class representative's adequacy is that, when presented with a potential settlement, the class representative may "be more concerned with maximizing those incentives than with judging the adequacy of the settlement as it applies to class members at large." Staton, 327 F.3d at 977. This is particularly salient when the incentive award is disproportionate to the class's recovery, because the disproportionality may "eliminate[] a critical check on the fairness of the settlement for the class as a whole." Id. In an extreme case, the conditional incentive award may be "so large in relation to the judgment or settlement that if awarded it would significantly diminish the amount of damages received by the class." See Espenscheid v. DirectSat USA, LLC, 688 F.3d 872, 875-76 (7th Cir. 2012) (Posner, J.) (citations omitted). In such circumstances, a class representative "would then have a clear conflict of interest . . . ." Id.

Here, both the size of the incentive award relative to the settlement as a whole and the disparity between the incentive award and the average unnamed class members' recovery render Zaldivar inadequate. The $10,000 currently earmarked for Zaldivar is more

8

than 7 percent of the total settlement fund, more than 15 percent of the total amount of the common fund earmarked for the class, and more than 37 times the $269 average net recovery of the unnamed class members.  Furthermore, if the Court were to deny any incentive award to Zaldivar, the $10,000 provided for him in the settlement agreement would be paid out to unnamed class members, Settlement Agreement § 2.26, thus increasing the average net recovery of unnamed class members to (by the Court's math) over $310, an increase of 15 percent.  This is grossly disproportionate when compared to both empirical research showing incentive awards constitute on average 0.16 percent of the class recovery, with a median of 0.02 percent,[3] Eisenberg & Miller, Incentive Awards, supra, 53 UCLA L. Rev. at 1339, and similar cases approving incentive awards.  See, e.g., In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000) (approving an incentive award of $5,000 constituting only 0.56 percent of the settlement fund); Ontiveros v. Zamora, Civ. No. 2:08-567 WBS DAD, 2014 WL 3057506, at *9 (E.D. Cal. July 7, 2014) ("An incentive award consisting of one percent of the common fund is unusually high, and some courts have been reticent to approve incentive awards that constituted an even smaller portion of the common fund.") (collecting cases).  In fact, incentive awards at or near just one percent of the common fund payable to the class "will receive intense scrutiny and require exceptional justification."  2 McLaughlin on Class Actions § 6:28 (11th ed. 2014).

---

[3] Eisenberg and Miller also found that the mean and median for employment cases (excluding employment discrimination) is 0.06 percent of the class recovery, although the study included only three employment class actions.  53 UCLA L. Rev. at 1339.

9

1    A recent case, Wallace v. Countrywide Home Loans, Inc., 2014
2 WL 5819870 (C.D. Cal. Apr. 14, 2014), illustrates the Court's
3 concerns with this settlement.  In Wallace, Judge Staton on the
4 Central District of California denied preliminary approval in a
5 case asserting similar overtime claims, finding the disparity
6 between the named plaintiffs' incentive awards and the classes
7 recovery "seriously jeopardizes the adequacy of the Lead Plaintiffs
8 to represent absent class members in settling their claims.  See
9 2014 WL 5819870, at *5.  The settlement in Wallace created a common
10 fund of $10.5 million, and provided for class members to receive
11 the lesser of $1,500 or an equation taking into account the number
12 of overtime hours worked on average in excess of five hours per
13 week multiplied by the overtime pay rate.  Id. at *3.  At the same
14 time, the three lead plaintiffs could apply to the Court for an
15 incentive award of $50,000 each in addition to whatever they would
16 be entitled under the settlement.  Id. at *4.  Acknowledging that
17 the $50,000 figure was a maximum subject to court approval, Judge
18 Staton concluded that by offering the possibility of an incentive
19 award 33 times greater than the maximum recovery for each class
20 member, "the Settlement Agreement threatens the capacity of the
21 Lead Plaintiffs to adequately represent the class."  Id. at *5.
22    Here, not only is Zaldivar's incentive award 37 times greater
23 than the amount an average class member will receive, but it also
24 makes up 7 percent of the entire settlement pool, attorneys' fees,
25 administration costs, and class compensation included.  As a
26 result, the Court seriously questions whether Zaldivar "could be
27 expected to fairly evaluate whether awards [averaging $269 are] a
28 fair settlement value when [he may] receive [a $10,000] incentive

10

award[])." Radcliffe, 715 F.3d at 1165.

Admittedly, this award is subject to the Court's approval, however as the Wallace court pointed out, the Ninth Circuit's concerns in Radcliffe were not ameliorated by the possibility the court might deny or reduce the award. Wallace, 2014 WL 5819870, at *5 (citing Radcliffe, 715 F.3d at 1162, 1165-66). On the contrary, cutting Zaldivar's incentive award prior to final approval would address the Court's concern that $10,000 overcompensates him for his duties, but would do nothing to address the Court's concern that the disproportionality of the incentive award has destroyed Zaldivar's adequacy.

To be clear, the Court is not suggesting that Zaldivar is irretrievably inadequate or that an incentive award is impermissible in this case. Indeed, the facts of this case likely justify a reasonable incentive award, likely no more than $5,000 (and perhaps significantly less depending on the size of an eventual settlement). See Staton, 327 F.3d at 977 (stating relevant factors for an incentive award including the actions of the named plaintiff, degree of benefit to the class, time and effort expended, and fears of workplace retaliation). However, the Court cannot approve the settlement as it stands now because the size and disproportionality of the proposed incentive award seriously jeopardizes Zaldivar's adequacy to represent the unnamed class members.

**V.   CONCLUSION**

For the reasons set forth above, preliminary approval is DENIED. In closing, the Court notes that the parties have not

11

1  provided enough information about the potential value of the class'
2  claims if they are taken to verdict.  This information is important
3  because the damages the class may receive at trial are an important
4  factor in assessing the amount offered in the settlement.  See
5  Bayat, 2015 WL 1744342, at *4 (citing In re HP Inkjet Printer
6  Litig., 716 F.3d 1173, 1178-79 (9th Cir. 2013); Laguna Coverall N.
7  Am., Inc., 753 F.3d 918, 929 (9th Cir. 2014) (Chen, J.,
8  dissenting), vacated on other grounds, 772 F.3d 608 (9th Cir.
9  2014)).  The parties shall provide this information along with any
10 future proposed settlement.

12       IT IS SO ORDERED.

14       Dated: May 8, 2015         
15                                  UNITED STATES DISTRICT JUDGE